# THE CYCLONE CASE.

## PUFFER MANUFACTURING COMPANY v. WILLIAM A. DEARMAN.

### [54 South. 310.]

BAILMENTS. *Hiring. Sales. Conditional sale. Executory contract for future sale. Destruction of property. Cyclone.*

A written instrument, called a lease, by which a soda fountain was hired by the owner to another for use, the hire to be paid in installments, providing that the property should be insured in the name of the owner for the benefit of both, should not be removed from the premises of the hirer nor his interest therein assigned without the owner's consent, and that it might be retaken by the owner for non-payment of any installment when due, in which event future installments were not to be exacted, but stipulating that on full payment of all installments the title

should vest in the hirer, is a contract of hiring, with an executory provision for a future sale, and not a conditional sale as of its date; and in case the property be destroyed by a cyclone before payment of all of the installments of hire, the claim that the instrument evidences a conditional sale will not serve the owner as a "storm pit" for protection from loss.

FROM the circuit court of Lamar county.

HON. WILLIAM H. COOK, Judge.

The Puffèr Manufacturing Company, appellant, was plaintiff in the court below; Dearman, appellee, was defendant there. From a judgment in defendant's favor, plaintiff appealed to the supreme court. The suit was upon a number of promissory notes given by the defendant to plaintiff, according to defendants' claim, as installments of hire for a soda fountain; but, according to plaintiff's claim they were given as installments of purchase money for the fountain. One of the notes (they were all alike except as to times of maturity) is set out in the opinion of the court. The appellant, the manufacturing company, contracted to put appellee, Dearman, in possession of and give him the use of a soda fountain and fixtures to be installed in his place of business at Purvis, Mississippi, and thereafter the property was installed in accordance with the agreement. Shortly after the installation of the fountain and when only one payment of the hire had been made, and before any of the others were due, the property was destroyed by a cyclone which devastated the town. The other facts are sufficiently stated in the opinion of the court.

*F. M. Hunt* and *Mayes & Longstreet,* for appellant.

The contract under which the appellee held the soda fountain, etc., was not a contract of lease, but one of conditional sale, with title retained to secure the purchase money. In 3 Am. & Eng. Ency. Law (1st ed.) 426, in the text we have the following:— "Where the transaction between the parties is in reality, and

in its legal effect, a contract of sale conditioned on the payment of the purchase price in successive installments, it cannot be modified, nor its legal effect avoided by the fact that the parties speak of it as a "lease," and call the installments "rent." As shown in the notes to the above this doctrine is upheld by the overwhelming weight of authority. In *Ham v. Cerniglia,* 73 Miss. 290, 18 South. 577, there was merely a written contract drawn as a lease with nothing said about the title passing. This court held that the question whether the contract in that case was one of lease or conditional sale is determined by parol evidence, and cites with approval cases sustaining the text of the American and English Encyclopedia of Law quoted above.

In line with the above authorities is also the case of *Dederick v. Wolfe,* 68 Miss. 500, 9 South. 350. This court in the latter case, quoting from the United States supreme court, says: "In determining the real character of a contract, courts will always look to its purpose, rather than the name given it by the parties." The same doctrine as is set forth in this case is set forth in *Hervey v. Locomotive Works,* 73 U. S. 664; *Hereford v. Davis,* 102 U. S. 235. For further authority to sustain our position that the contract in this case is one of conditional sale and not of lease, see 21 Am. & Eng. Ency. of Law (1st ed.) 629, 636; 43 Am. Dig. (Cent. ed.) col. 1653, 1657; 6 Am. & Eng. Ency. Law (2d ed.) 447–449. In the case of *Unitype v. Long,* 16 Am. B. R. 129, the United States circuit court of appeals held a contract more resembling a lease than the one in this case a contract of conditional sale. The supreme court of Pennsylvania now holds such contracts conditional sales. *Kelly Springfield Road Roller Co. v. Schleimit,* 220 Pa. 413, 69 Atl. 867, 123 Am. St. Rep. 707.

The true construction of a contract like the one involved in this case is set forth in *Ross-Mehan Brake Shoe Foundry Co. v. Pascagoula Ice Co.,* 72 Miss. 615, 18 South. 364, in the following language:—

"The right of a seller of personal property to make a conditional sale thereof, reserving title until payment of the purchase price, is too firmly settled in this state to admit of controversy. *Duke v. Shackleford,* 56 Miss. 552; *Burnley v. Tufts,* 66 Miss. 48, 5 South. 627. But the reservation of title is but as security for the purchase price, and if the property is restored to the seller, he must deal with it as security, and with reference to the equitable rights of the purchaser. *Duke v. Shackleford, supra; Dederick v. Wolfe,* 68 Miss. 500, 9 South. 350; *McPherson v. Lumber Co.,* 70 Miss. 649, 12 South. 857; *Tufts v. Stone,* 70 Miss. 54, 11 South. 792. Being but a security for the payment of the money, the benefit thereof follows the debt, when assigned, as an incident thereof."

In *Tufts v. Stone,* 70 Miss. 54, 11 South. 792, this court held that, though the contract stated that the title remained in the seller until the purchase money was fully paid, the court will look through the letter of the contract to determine the intention, and declare the title to be vested in the purchaser with a lien thereon for the purchase money.

The foregoing authorities clearly show that appellee should be treated as owner of the property for which the notes sued on were given so far as a case like this is concerned, and it necessarily follows that, as appellant merely retained title as security, and could deal with it only as security for the purchase price, that the destruction of the property, being merely destruction of the security, will not relieve the appellee from paying therefor. But we have a case decided by this court directly in point, in the case of *Burnley v. Tufts,* 66 Miss. 48, 5 South. 627, which is thoroughly decisive of the case at bar. It declares that if property sold on condition that title shall remain in the vendor until the purchase money is paid, is destroyed, without fault on the part of the vendee, the loss falls on the vendee, who will still have to pay the balance due on the purchase price.

97 Miss.—40

The cases of *Henry v. Lavalley* (Vt.), 2 L. R. A. (N. S.) 97; *Marion Mfg. Co. v. Buchanan* (Tenn.), 8 L. R. A. (N. S.) 590, and *Whitlock v. Auburn Lumber Co.* (N. C.), 1 L. R. A. (N. S.) 1214, are directly in line with *Tufts v. Stone, supra.* In the note to *Henry v. Lavalley,* 2 L. R. A. (N. S.) 97, are collected the earlier authorities on this point. It is there shown that in nearly every case in which the seller has done all that is required of him in order that title shall vest absolutely in the purchaser, except to receive the purchase money, it has been held that if, the property is destroyed without fault on the part of the purchaser, he will have to pay for it.

In the case of *Marion Mfg. Co. v. Buchanan* (Tenn.), 8 L. R. A. (N. S.) 590, we have the following:—

"We are of the opinion that the true rule is that the loss must fall on the purchaser."

The supreme court of North Carolina, in *Whitlock v. Auburn Lumber Co.,* 58 S. E. 909, 12 L. R. A. (N. S.) 1214, further says: "The real and substantial nature of the transaction for the purpose of determining who should bear the loss is that of mortgagor and mortgagee, or lienor and lienee."

Under the contract, the parties thereto made what was, in legal effect, a conditional sale, and not a lease. It is an old device, which the courts have often rejected, to put what is, in fact, a conditional sale in the form of a lease; but calling the contract a lease, and calling the vendee a lessee, does not amount to anything. The law looks to things in order to classify them, and not to the names with which parties see proper to badge them.

A good statement of the doctrine is found in 6 Am. & Eng. Ann. Cases, 685. So, also, in 35 Cyc. 656, are cited many cases; and see the note to *Fleet v. Hertz,* 94 Am. St. Rep. 248.

*McWillie & Thompson* and *C. G. Mayson,* for appellee.

That the contract was one of lease and not of sale seems to

us to be quite apparent from its terms, and its executory provisions for a future sale cannot avail the appellant in this case.

1. The contract designates itself as a lease. While this fact is not absolutely controlling, it had and should receive persusive effect in determining its true construction, since it shows that the idea of a lease was uppermost in the minds of the parties and they are presumed to have acted intelligently, and to have deliberately and wisely selected an appropriate term to express their meaning, unless a misuse of the word is clearly apparent from the instrument itself.

2. The first sentence of the contract is in these words, omitting the merely formal verbiage. "I, W. A. Dearman, have hired, leased and received of Puffer Manufacturing Co." the property. Neither the words bought or purchased is used, nor are the words acquired title or like words to be found in the instrument. No words whatever are used which in legal effect invest Dearman with title, as of date of the contract, to the property.

3. The term of the lease, or the time Dearman should have the use of the property, is definitely fixed by the contract itself in these words:—"for the term, to-wit: five years ten and 25/100 months, ending December 1, 1913." Language quite appropriate to a lease or hiring contract, but wholly inappropriate in a contract of sale, whether the sale be conditional or unconditional.

4. The words following the description of the property are these, "and I [Dearman] do promise and agree with the said Puffer Manufacturing Co.,—to pay it or them for the possession and reasonable use thereof, for said term, the sum of One Thousand seven hundred and seventy-five ($1,775.00) dollars, as rent," etc. Here we have payments to be made (not for title to the property) but "for the possession and reasonable use thereof," and the possession and use was "for said term" and the pay-

ments were to be made "as rent," language wholly at war with the idea that the title to the property passed to appellee upon the execution of the contract, but singularly appropriate to a contract of lease and of hiring personalty.

5. The provision of the contract following the description of the notes to the effect that Dearman was to insure the property in appellant's name against loss by fire, and in its name as owner (and appellee did so insure it), is quite conclusive against appellant's contention. It makes no difference that the insurance was to be for the benefit of appellant and Dearman, since the lessee had an insurable interest, measured by the term of his lease, during which he had a right to the use of the property.

6. Even in the clause of the contract by which Dearman assumed to pay taxes on the property he assumed to do so as "the lessee," and the provision is coupled with another wherein it is stipulated "that the said property hereby leased" is not to be removed, etc., followed by still another, that the interest in the property of the "lessee under the lease" should not be transferred without appellant's written consent. All of these provisions are harmonious with and are expressed in words quite appropriate to appellee's construction of the contract, but entirely at war with appellant's construction of the instrument.

7. The rights of appellant under the contract in case Dearman made default in the payment of the notes, or any one of them, are also in harmony with the idea that title did not pass under the contract at its execution. It provides that "Upon any breach of the provisions of this lease  *  *  *  then this lease, and any or all claim or right on the part of said lessee under the same, or to the further use and possession of said property shall be thereby terminated at the option of the lessor," and authorized appellant to take possession, without process of law, or "let or hinderance from the lessee," and further stipulates that

upon the resumption of possession by appellant all undue notes shall become void. These provisions not only designate the instrument as a lease and the parties as lessee and lessor respectively, but provide for the actual return of the property to the appellant, not for the purpose of a sale to enforce payment of the notes, but a return to the owner as such; they further provide for an absolute abandonment of the contract and the rent notes not matured when possession of the property should be taken by appellant; provisions consistent with a lease, because a lessor should not collect rent for that part of a term in which the lessee was deprived by him of the use of the property, but wholly inconsistent with the idea that the notes evidenced a purchase money debt and with the conception of a sale coincident with the execution of the contract.

8. The terms of the contract in the paragraph next before the concluding one, designate the contract as a lease and the appellee as a lessee, and the concluding paragraph of the instrument expressly provides that "said obligations [the notes] are not to be taken as payment for said goods and chattels [the property] under any law in any state, but only as evidence of the amount to be paid in order that the lessee may become the owner of the property," and each of the notes reiterates the same provision and each designates the contract as a lease.

9. The only terms of the contract which can be made to serve as a peg to support an adverse argument are found in the words: "That upon full payment of the several obligations aforesaid, all claims and title to said property on part of said Puffer Manufacturing Co., shall cease and the whole title shall vest in the lessee as owner" and the provision already quoted found at the end of the instrument to the effect that the notes should not evidence purchase money but the amount to be paid in order that the lessee may become owner of the property. To construe these provisions in such a way as to make the contract one

evidencing a conditional sale, conveying title to appellee upon its execution is to do violence to all the balance of the instruments and as well to the very terms in which they are expressed, while to construe them as executory in their nature and as providing for a future sale, after the maturity and upon the payment of all the notes, renders the whole instrument harmonious with itself and does no violence to the intelligence of the parties. The terms of the instrument last quoted carry in themselves the idea, not of the ordinary conditional sale, with reservation of title to secure purchase money, but of a future sale; one in this case never made. When by said terms were the claims and title of appellant to the property to cease? When was the title to vest in appellee? Not until the full payment of all the notes. The words used are that the appellant's "title to said property shall cease and" the "title shall vest in the lessee as owner," both phrases looking to the future and providing for a future cessation of appellant's title and a future vesting of title in appellee. And the same can be said of the concluding clause of the contract.

The case is not unlike several in our books wherein a tenant was to pay rent for land for a number of years and was to receive a conveyance at the end of the term, if he promptly and fully paid the rentals annually. This court has construed such contracts and adjudicated that the relation of landlord and tenant existed between the parties before all payments were made and the landlord could attach for rent in arrears. *Nobles v. Mc-Carty,* 61 Miss. 456, is the leading case.

The authorities cited by opposing counsel are not adverse to our contention, none of them dealt with a lease containing an executory contract of sale. All of them were cases of conditional sales, as shown by the contracts when construed as a whole, coincident in time with their execution. All of them were cases wherein the seller reserved title as a security for purchase money, and this was apparent from the instruments, not-

withstanding the misuse of terms.    This is especially true of the case of *Burnley v. Tufts,* 66 Miss. 48, a case wherein the property was destroyed while in the purchaser's possession.    We invite the court to compare the facts in that case and the contract there involved with the facts and the contract here under consideration.    There a sale was made coincident with the execution of the contract, and the title was reserved as a security for the purchase money debt; here there was no sale coincident with the making of the contract, there was no purchase money, simply an executory provision for a future sale, as in *Nobles v. Mc-Carty,* 61 Miss. 456.    The title to the property under the contract construed in *Burnley v. Tufts* was, at least conditionally, in Burnley when the property was destroyed and he owed the purchase money debt.    By the very terms of the contract in this case, the passing of title, even conditionally, was expressly negatived, with an executory provision for its passage at a future date upon the performance of a condition precedent, and, if the condition was not complied with the notes were to be void.

If the Tennessee case cited by appellant's attorney,—*Marion Manufacturing Co. v. Buchanan,* 8 L. R. A. (N. S.) 590, and the North Carolina case, *Whitlock v. Auburn L. Mfg. Co.,* 12 L. R. A. (N. S.) 1214, also cited, the court in each cause gave great weight to the fact that the contract did not provide that the purchaser should ever, under any condition, be released from the payment of the purchase money; in fact, that seems to have been a controlling feature of the decisions.    The contract under consideration provides for such release and the provision is quite influential in our favor.

Still another consideration is strongly persuasive of the correctness of our position.    Dearman did not have the right to control the property; the contract expressly negatived his right in this regard by the provision that it was not to be removed from the premises where installed, and that the lessee, Dearman, should not transfer his interest in it without appellants consent.

Some of the authorities cited by appellant's counsel show that the right to control the property is a matter of consequence and is often a material factor in the construction of contracts of the general character of the one involved in this suit.

Argued orally by *Edward Mayes,* for appellant, and by *R. H. Thompson,* for appellee.

WHITFIELD, C.

The decision of this case pivots upon the single legal inquiry whether the instrument in question evidences a conditional sale with a reservation of title as mere security for the debt, or a lease with all the incidents of a lease.    There are several cases in our reports construing instruments, written in different terms, however, from the instrument here involved, as conditional sales, operating as mere security for the purchase price.    See *Ross-Mehan Co. v. Pascagoula Ice Co.,* 72 Miss. 615, 18 South. 364, and the authorities therein cited.    But the instrument here is very radically different from the instruments construed in those cases.

The case which controls this case is the case of *Nobles v. Mc-Carly,* 61 Miss. 456.    The instrument there was in the following words:

"This agreement, made and entered into by and between W. A. Moore, agent for James Haley, of the first part, and R. F. Swilly, of the second part, to-wit: The party of the second part agrees to pay W. A. Moore sixty dollars for the rent of a place known as the 'Haley Place' and now occupied by said Swilly, as rent for the year 1882, and one hundred dollars for each of the years 1883–4–5, this to be placed on Swilly's note for six hundred dollars, due and payable one day after date, as a credit.    It is agreed and understood this one hundred dollars for each year is to be collected as rent.    Upon the prompt and full payment of said note and interest on or before the 1st day of January, 1886, the party of the first part agrees and hereby

binds himself and his heirs to make said Swilly a warranty deed to said place. When the above amounts have been paid as agreed, then this bond to be void; otherwise to remain in full force.

"[Signed]   W. A. Moore."

And the court, in construing that instrument, said:

"Our interpretation of the contract between Moore, as agent of Haley and Swilly, is that the latter became a tenant, obliged to pay rent as stipulated, with the right to have the title to the land in fee on payment of the note for $600 and interest, and the rent he might pay was to go as credit on the purchase money. There was nothing forbidden by law in this arrangement, and the relation of landlord and tenant existed between the parties."

The instrument in this case is in the following words:

"Lease.

"The Puffer Manufacturing Company, Manufacturers of Soda and Mineral Water Apparatus, Extracts and Supplies.

"Boston, Mass., January 6th, 1908.

"Know all men by these presents, that I, W. A. Dearman, of Purvis, state of Mississippi, have hired, leased and received of Puffer Manufacturing Co., a corporation duly established by law and having its usual place of business in the city of Boston, in the county of Suffolk, commonwealth of Massachusetts, for the term, to wit, five years, ten and 25/100 months, ending December 1, 1913, subject to the conditions herein stated, the following described chattels and goods:

"One Constellation style soda and mineral water draft apparatus, numbered 396, consisting of Knolville and Italian marble dispensing counter with return, and 14 syrup jars and lifts, Onyx draft stand with four draft arms and light fixtures, work board and two sinks, 2 rubbish chutes, fruit board, fruit drawer, automatic tumbler washer, cracked ice basin and bottle rings, towel rail, corrugated drainers, 2 ice cream cabinets and packers, cooler box, coolers, leaders, pipes and all appurtenances

thereto, Back fixtures consisting of refrigerator base with wood superstructure and mirrors and light fixtures, marble refrigerator slab, one style four Faithful carbonator numbered 1354 with pump, cylinder, regulator, gauges, valves, pipes and connections, six wire chairs, manufactured by the said Puffer Manufacturing Co., and numbered as above; and I do promise and agree with the said Puffer Manufacturing Co., its representatives and assigns, to pay it or them for the possession and reasonable use thereof, for said term, the sum of one thousand seven hundred and seventy-five ($1,775.00) dollars, as rent, to be paid, fifty ($50.00) dollars cash, and the balance in the installments set forth in the several obligations given by me therefor as follows:

| | | | | |
|---|---|---|---|---|
| Apr. 1, 1908 | $ 150 00 | June 1, 1911 | | 33 35 |
| May 1, 1908 | 33 35 | July 1, 1911 | | 33 35 |
| June 1, 1908 | 33 35 | Aug. 1, 1911 | | 33 35 |
| July 1, 1908 | 33 35 | Sept. 1, 1911 | | 33 35 |
| Aug. 1, 1908 | 33 35 | Oct. 1, 1911 | | 33 35 |
| Sept. 1, 1908 | 33 35 | Nov. 1, 1911 | | 33 35 |
| Oct. 1, 1908 | 33 35 | Apr. 1, 1912 | | 33 35 |
| Nov. 1, 1908 | 33 35 | May 1, 1912 | | 33 35 |
| Apr. 1, 1909 | 33 35 | June 1, 1912 | | 33 35 |
| May 1, 1909 | 33 35 | July 1, 1912 | | 33 35 |
| June 1, 1909 | 33 35 | Aug. 1, 1912 | | 33 35 |
| July 1, 1909 | 33 35 | Sept. 1, 1912 | | 33 35 |
| Aug. 1, 1909 | 33 35 | Oct. 1, 1912 | | 33 35 |
| Sept. 1, 1909 | 33 35 | Nov. 1, 1912 | | 33 35 |
| Oct. 1, 1909 | 33 35 | Apr. 1, 1913 | | 33 35 |
| Nov. 1, 1909 | 33 35 | May 1, 1913 | | 33 35 |
| Apr. 1, 1910 | 33 35 | June 1, 1913 | | 33 35 |
| May 1, 1910 | 33 35 | July 1, 1913 | | 33 35 |
| June 1, 1910 | 33 35 | Aug. 1, 1913 | | 33 35 |
| July 1, 1910 | 33 35 | Sept. 1, 1913 | | 33 35 |
| Aug. 1, 1910 | 33 35 | Oct. 1, 1913 | | 24 25 |
| Sept. 1, 1910 | 33 35 | Nov. 1, 1913 | | 25 00 |
| Oct. 1, 1910 | 33 35 | Dec. 1, 1913 | | 25 00 |
| Nov. 1, 1910 | 33 35 | Cash | | 50 00 |
| Apr. 1, 1911 | 33 35 | | | |
| May 1, 1911 | 33 35 | | | $1,775 00 |

with interest from date hereof at the rate of six per cent. per annum, and until such payment shall keep the said goods and chattels insured against fire in the sum not less than one thousand seven hundred and seventy-five dollars, in the name of the said Puffer Manufacturing Co., as owners, and for the benefit of said Puffer Manufacturing Co., and the said W. A. Dearman.

"And it is provided that the lessee will pay all tax assessed on this property. And it is provided that said property hereby leased is not to be removed from the premises where now located, number 109 Maple street, in said Purvis, Mississippi, nor the interest of the lessee under the lease to be transferred without the consent of the said Puffer Manufacturing Co. in writing thereto first obtained. And it is further provided that, upon full payment of the several obligations aforesaid, all claims and title to said property on part of said Puffer Manufacturing Co., shall cease, and the whole title shall vest in the lessee as owner; but upon any breach of the provisions of this lease, especially upon failure by said lessee to pay the several obligations or either of them as they become due, and payable, then this lease, and any and all claim or right on the part of said lessee under the same, or to the further use and possession of said property, shall be hereby terminated at the option of the lessor, and the said Puffer Manufacturing Co., or its representatives, may thereafter at any time enter the premises where said property may be and resume the possession of the same without any process of law or hindrance from the lessee, and such of the aforesaid obligations as mature after said Puffer Manufacturing Co., have resumed possession of said property shall be taken and held to be void and returned to the lessee upon demand, but the obligations then due and unpaid shall remain in full force and effect. And it is mutually understood by both parties to the lease that said lessee has not the option

of terminating this lease at his pleasure, but shall retain the said goods and chattels for the length of time specified, and pay all the said obligations as they mature.

"Said obligations are not to be taken as a payment for said goods and chattels under any law in any state, but only as evidence of the amount to be paid in order that the lessee may become owner of the property.

"Witness my hand and seal this 26th day of February, 1908.

"W. A. Dearman.    [Seal.]"

Each of the notes is in the following words, except as to dates, etc.:

$33.35.                 .            Boston, Mass., January 6th, 1908.

"May 1, 1908, after date, I promise to pay to the Puffer Manufacturing Co., or order, thirty-three and 35/100 dollars, with interest at six per cent., as per a lease to me of certain goods of this date.  Value received.  Payable at ———. [Bank No. 4,260.]

"This obligation is not to be taken as a payment of the property leased in connection herewith, under any law in any state, but only as evidence of a certain amount to be paid in order that the lessee may become owner of the property leased.  No. 1. Due May 1, 1909.                          W. A. Dearman.

Address:  Purvis, Miss."

Indorsed:    "W. A. Dearman.    May 1, 1908."

The appellant company has exhausted legal ingenuity in making this instrument express a contract of lease and nothing else. Having done so, the appellant must abide by the consequence of the contract, which he has thus carefully and expressly made a lease, and a lease only.  This instrument must be held to be a lease, and not a conditional sale.  To hold otherwise would not be to construe the contract as actually made, but to make a new contract for the parties.  This we cannot do.  The appellant could not thus clearly and explicitly make a contract a

lease, and nothing else, and then, when the subject of the contract, a soda fountain, is destroyed by an accident never contemplated by the terms of the contract, to-wit, a cyclone, seek to change the contract from a lease to a conditional sale, and thus seek refuge, as in a storm pit, in a forced construction of it as a conditional sale, in order to escape loss which, as landlord, the appellant must bear.

PER CURIAM.   The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the judgment of the court below is *affirmed.*