ROBERTSON, STATE REVENUE AGENT *v.* PUFFER MFG. CO.

[73 South. 804, Division B.]

1. COURTS. *Rules of property. Contract. Construction.*
   When the supreme court has construed a contract as a lease and not a conditional sale and one of the parties to the action afterwards made a similar contract, the decision became a rule of propery binding on such party,

2. TAXATION. *Liability of holder of legal title. Personal property.*
   The lessor of a soda fountain, being the holder of the legal title thereof, is liable for the personalty tax thereon.

3. TAXATION. *Personal liability. Owner. Contract to assume. Effect.*
   When the taxing board discovers the owner of the legal title, its duties are performed when it assesses the property to such owner, without regard to the equities which may exist between the owner and his lessee.

APPEAL from the circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Suit between S. V. Robertson, State Revenue Agent, and the Puffer Manufacturing Company. From an adverse judgment, the revenue agent appeals.

The state revenue agent caused certain soda fountains located in Hinds county, Miss., to be assessed for back taxes for a term of years. The notice given by the revenue agent to the assessor directed him to assess said property to the Puffer Manufacturing Company as the owner. The property assessed was held by the McIntyre Drug Company under a contract hereinafter set out, and it was claimed by the appellee that the contract is a conditional sale, and that the property really belongs to the McIntyre Drug Company, and that taxes should be assessed against that company as the owner. It is admitted that no taxes for the years claimed have been paid by any one on this property. The case was submitted to the circuit judge on an agreed state-

ment of facts, and from an adverse decision the revenue agent appeals. The contract executed by the Puffer Manufacturing Company and the McIntyre Drug Company is as follows:

"Lease.
"The Puffer Manufacturing Company, Manufacturers of Soda and Mineral Water Apparatus, Extracts, and Supplies.
"Boston, Mass., Oct. 1, 1908.

"Known all men by these presents that McIntyre Drug Company, 343-345 W. Capitol street, of Jackson, state of Mississippi have hired, leased, and received of the Puffer Manufacturing Company, a corporation duly authorized by law and having its usual place of business in the city of Boston in the county of Suffolk, commonwealth of Massachusetts, for the term, to wit, four years four and three-thirtieth months, ending February 5, 1913, subject to the conditions herein stated, the following described goods and chattels: One Constellation soda and mineral water draft apparatus No. 513 and appurtenances fully described or manufactured by the said Puffer Manufacturing Company, and numbered as above. And we do promise and agree with the said Puffer Manufacturing Company, its representatives and assigns, to pay it, or them, for the possession and reasonable use thereof, for said term, the sum of four thousand eight hundred dollars as rent, to be paid in the installments set forth in the several obligations given by us therefor as follows: Cash five hundred dollars balance at the rate of ninety dollars a month from March 5, 1909, to January 5, 1913, and seventy dollars February 5, 1913; total four thousand, eight hundred dollars—with interest from date hereof at the rate of six per cent. per annum. And we agree this day to insure the said goods and chattels against fire and cyclones in a sum not less than four thousand three hundred dollars, in the name of said Puffer Manufacturing Company, as

owners, and for the benefit of the said Puffer Manufacturing Company, and the said McIntyre Drug Company. And in the event of failure to so insure and deliver policy to said Puffer Manufacturing Company within thirty days from the date hereof, the said Puffer Manufacturing Company may so insure said goods and chattels, and any premium paid for such insurance by said Puffer Manufacturing Company shall be an obligation which must be paid by the lessee in addition to the above-mentioned obligations. And it is provided, that the lessee will pay all taxes assessed on this property. And we further agree that if the whole or any part of the money due by virtue of any of the provisions hereof, whether evidenced by any of said obligations or otherwise due according to any of the terms and provisions of this instrument, or by reason of any breach of said terms or provisions, be not paid when due, and if an attorney be employed for the collection of same, or if any sum so due be collected by an attorney or by legal proceedings of any kind, an attorney's fee of ten per cent. of the amount due, in addition to all costs and expenses incident to such collection, shall be added to the amount so due, and shall become an obligation of like force and effect with the obligations above referred to.

"And it is provided that said property hereby leased is not to be removed from the premises where now located, No. 343-435 W. Cap. street, in said Jackson, Miss., nor in the interest of the lessee under the lease to be transferred without the consent of the said Puffer Manufacturing Company in writing thereto first obtained.

"And it is further provided that upon full payment of the several obligations aforesaid all claims and title to said property on part of the said Puffer Manufacturing Company shall cease, and the whole title shall vest in said lessee as owner. But upon any breach of the

provisions of this lease, especially upon failure by the said lessee to pay said obligations, or either of them, as they become due and payable, then all of the said several obligations shall mature and become due immediately, and, at the option of the lessor, this lease and any and all claim or right on the part of the lessee under the same, or to the further use, or to the further use or possession of said property, shall be thereby terminated, and the said Puffer Manufacturing Company, or its representative, may thereafter at any time enter the premises where the said property may be and resume possession of the same without any process of law or let or hindrance from the lessee, and such of the aforesaid obligations as but for said default would have matured after said Puffer Manufacturing Company have resumed possession of said property shall be taken and held to be void, and returned to the lessee upon demand, but the obligations which became due and were unpaid prior to said default shall remain in full force and effect. And it is mutually understood by both parties to the lease that said lessees have not the option of terminating this lease at their pleasure, but shall retain the said goods and chattels for the length of time specified, and pay all the said obligations as they mature.

"Said obligations are not to be taken as a payment for said goods and chattels under any law in any state, but only as evidence of the amount to be paid in order that the lessee may become owner of the property.

"Witness our hand and seal this 10th day of October, 1908.

"[Signed]  McIntyre Drug Co.,<br>
"By C. A. McIntyre. [L. S.]"

*Jas. R. McDowell* and *Fred M. West,* for appellant.

*W. Calvin Wells,* for appellee.

COOK, P. J., delivered the opinion of the court.

This is a suit between the revenue agent and appellee to ascertain to whom should be assessed taxes on a soda water fountain, and from a judgment for appellee, appellant appeals to this court.

The document construed in *Puffer Mfg. Co.* v. *Dearman,* 97 Miss. 622, 54 So. 310, is essentially the same as the document to be construed in the present case. There is a slight difference, but it does not affect the question involved. The Dearman Case must be overruled to affirm the judgment of the circuit court. It seems to be assumed that the Dearman Case is manifestly wrong, but the reasoning employed to reach that conclusion is far from convincing.

But suppose we assume that the assumption is sound; that the document so laboriously and ingeniously prepared to create a lease is, at least, nothing more than a conditional sale. Does it necessarily follow that we should now label it a conditional sale? Mind you, when the parties entered into this contract they intended it to be construed as a lease because they were actually advised by the highest authority of this state that the contract was a lease. Must we change contracts overnight that have already been interpreted by the court of last resort, or must we stand by the decision formerly rendered, and thus preserve the contractual rights of the parties?

By the terms of this contract the lessee is obligated to pay the taxes, but according to this court the lessor was the owner of the soda fountain when he sent it into this state. Why not make him pay the taxes on his own property, and, if necessary, or if he can, let him enforce his contract and reimburse himself?

Appellee in this case was a party to the Dearman Case, and it was definitely advised that its printed contract was a lease, and when this contract was signed both parties thereto undoubtedly understood just what

they were doing. They agreed to make a lease contract, and as a part of the consideration lessee agreed to pay the taxes. We have nothing to do with the agreement to pay taxes, except to consider it in arriving at the intention of the parties. The property must be assessed to the owner, and this court has already located the owner in the Dearman Case.

Let us consider for a moment the Dearman Case. The Puffer Manufacturing Company, appellee here, contended that the instrument prepared by itself, with the utmost care, was not what it purported to be; that it did not mean what it said. The reason for this contention was then as now to escape the penalties of ownership.

Judge Whitfield, speaking for the court, rejected appellee's contention, and held that appellee had carefully and unmistakably chosen for itself its relation to Mr. Dearman. The contract was written for the express purpose of retaining the ownership of the property in the Puffer Manufacturing Company, and, this being true, no court would permit appellee to shift its chosen position to escape the burden self-imposd by the contract. This, at least, was exact justice, and the law aims to administer justice. Not only was the decision the essence of common sense, but it is impossible to discover any weakness in the reasoning of the learned judge, tested by the rules of law as administered by the courts.

It is reasonably certain that the decision of this court in the Dearman Case announces a "rule of property," which should, for reasons of policy, be adhered to. The contract interpreted in that case was labeled a lease. The same contract should not now be changed into a conditional sale. The parties to this contract knew that they were executing a contract of lease, because this court had already laid down a rule of construction of this very contract, announcing that the very contract in question created the relationship of lessor and lessee between the contracting parties. By

appealing to the rule of property principle, however, we do not admit that there is any weakness in the former decision, but merely mean to say, if we concede the strength of appellee's reasoning, it does not follow that this case should be affirmed. Certainly, the lessee could rely on a precise decision of the highest court of the state to define his property rights.

In the Dearman Case the ownership of the thing leased was placed in the lessor. The lessee in this case, of course, contracted with the knowledge that his *status* was fixed by judicial decree, and the freedom of contract would be denied should we now hold that this contract was not a lease, but is a conditional sale. The intention of the parties to the contract cannot be doubted in the light of the Dearman Case, and there is no rule of reason or law warranting this court to make a contract for the parties.

We come now to the narrow question presented by this record, viz: To whom should the property be assessed?

Judge Cooley in his excellent work on Taxation (3d Ed.), p. 731, discussing this question, answers it in this way:

"By the owner of property for the purposes of assessment is meant the legal, and not the equitable, owner; . . . therefore trustees having the legal title are properly assessed."

The learned author, and we know of none of greater learning pursuing the subject, says:

"Where land is sold by executory contract, it is rightly assessed to the vendor until the vendee becomes entitled to a conveyance."

Appellee insists that the property was sold to the appellee upon the condition that he should become entitled to a conveyance of the legal title by his compliance with the terms of his executory contract; that the contract executed by the parties was, in fact, and by its terms, merely a conditional sale.

Granting the soundness of this contention, what then follows? If Judge Cooley is right, the property should be assessed to the seller of the property, for the reason that the legal title to the property was to remain in the seller until the purchaser complied with the terms of his contract. For purposes of taxation the state is not required to adjust the equities between the contracting parties, the taxing board seeks the legal owner, and when he is found, the property is assessed to him. Any other rule, it seems to us, would place upon the taxing authorities an intolerable burden and lead to complications and entanglements which would be impossible of solution, and from which the most learned chancellor might shrink.

When the taxing board discovers the owner of the legal title, its duties are performed when it assesses the property to such owner. The equities and contractual obligations between the parties to the executory contract do not concern the taxing board. The courts are open for their enforcement and adjustment, and in the meantime the revenues of the state will be collected from the legal owner, or by sale of the property assessed.

The case of *Watson* v. *Sawyers et al.,* 54 Miss. 64, is cited as holding a view opposite to the rule we have announced. We do not think so. That case was begun by the vendor for the specific performance of a contract for the sale of land. The vendee had allowed the land to be forfeited for taxes, and it was held that under the contract the vendee should have paid the taxes. The report of the case does not state the facts recited by the bill of complaint, but we assume that the land had been sold and the terms had been agreed to, and the vendor had executed a bond for title embodying the contract, but it seems that there was no agreement as to who was to pay the taxes, and the court held as between the parties to the contract without special

112 Miss.—57

stipulations to the contrary the vendee should have paid the taxes. This case, we think, does not decide the question here involved. In that case the court held that the vendee was in default and could not set up the vendor's failure to pay the taxes as a defense to the specific performance of the contract; that he should have paid the taxes.

That may be true in this case, if this was a suit between the lessor and lessee, indeed, the contract specifically provides that the lessee shall pay the taxes, but this is a suit between the state and the owner of the legal title, and for the purposes of assessment the state will look to him, and he can look to the lessee for reimbursement, if he is entitled thereto. It is important to keep in mind the parties to this suit.

It is unthinkable to us that the taxing officers must institute inquiries as to the equities between the parties to private contracts. It is only necessary that they ascertain the holder of the legal title, and leave to a court of equity the onerous and delicate job of fixing the duties and obligations of each of the contracting parties as between themselves.

These being our views, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*