## WOOD *v.* MORATH ET AL.

[90. South. 714, No. 22153.]

1. VENDOR AND PURCHASER. *Relation between owner and lessee prior to latter's receiving deed placed in escrow held that of landlord and tenant.*

   Where a landowner leases land to another at a monthly rental and at the same time, in accordance with a provision in the lease contract, executed a deed to the leased premises to the tenant and delivered it to another to be held in escrow for delivery to the tenant upon the payment by him of the rentals provided for in the lease contract and of all expenses incurred by the landlord for taxes, insurance, etc., the relation between the parties prior to the compliance by the tenant with the terms of the lease contract and the delivery to him of the deed held in escrow is that of landlord and tenant.

2. ESCROWS. *Ordinarily instrument in escrow does not take effect until final delivery.*

   In an absence of an agreement to the contrary, an instrument held in escrow by a third person does not take effect until its final delivery, unless, in order to prevent a failure of justice, it becomes necessary to make the second delivery relate back to the first and thereby cause the instrument to be effective from the first delivery.

3. LANDLORD AND TENANT. *In absence of agreement tenant not obliged to pay taxes.*

    In the absence of an agreement to the contrary, a tenant, as between himself and his landlord, is under no obligation to pay the taxes on the leased premises.

4. CONTRACTS. *Terms of unambiguous contract cannot be varied by parties' acts showing construction.*

    The terms of a plain and unambiguous contract cannot be varied by evidence of the acts of the parties thereto indicating a construction thereof by them at variance with its terms.

APPEAL from chancery court of Pike county.

HON. R. W. CUTRER, Chancellor.

Bill by W. P. Morath and others against H. D. Wood. Decree for complainants, and defendant appeals. Affirmed.

*Justin J. Cassedy,* for appellant.

Counsel for the appellee in his brief on the memorandum submitted by the court, taking up the question of whose duty it was to pay the taxes in the light of *Walker* v. *Harrison,* and *Robertson* v. *Puffer Manufacturing Company,* after citing several text-books, then proceeds to argue that the case of *Walker* v. *Harrison,* is not an authority on the point presented, because the decisions cited by the court in support of the decisions in that case were based on a different state of facts, from those in the Walker case. We must assume that our court in announcing a rule from the text-books was familiar with the English rule and the reasons therefor and its application to conditions here. We point out, too, the prominent fact that the court in those cases was deciding the questions of whether the landlord or tenant should pay the taxes, and the fact that the rent may have been of different kinds, does not affect or alter the principal announced. It was still rent. These authorities support the decision of the court in the Walker case, and are controlling in the case at bar. This being especially true from the fact that in our case Morath was a tenant for a number of years, under a

contract to purchase, making him even more than a tenant. Nor was the statement of the court in the Walker case that it is the duty of the tenant to pay taxes mere *dictum,* as intimated by the counsel for appellee. It will be noted that in the Walker case the question before the court was whether the tenant could purchase the land from the state when the land had been sold to the state for taxes prior to the beginning of the tenancy. At that time the rule had been established by many decisions in this state, that the tenant could not acquire title as against his landlord, and the court in holding that the tenant could acquire title from a third party, the state, where the land had been sold to the state prior to the beginning of the tenancy, stated that it was the duty of the tenant to pay the taxes as the reason why the tenant could not acquire title as ·against his landlord, thus differentiating the case it was then deciding, the Walker case, from those cases holding that the tenant could not acquire title against his landlord and this statement of the court, that it was the tenant's duty to pay the taxes, was a necessary part of the decision and not mere *dicta.* The Walker case is in harmony with the decisions of other courts, and the general rule that one in possession should pay taxes, and under it it was the duty of Morath to pay the taxes in the instant case.

On the second proposition opposing counsel takes the view that the conduct of the parties with reference to the payment of the taxes on the land cannot be looked to in determining the construction put by them on the contract, as to whose duty it was thereunder to pay the taxes, because he says this could only be done in cases where the contract is ambiguous, and that this is not such a contract, and seems to rely especially upon the case of *Griffin* v. *Edward Eiler Lumber Company,* 84 So. 225, 112 Miss. 265, in support of his position. An examination of this case shows that the contract between the parties was not construed by the court, but that the court only decided that under the contract it was, as a matter of law, the

128 Miss.—10

duty of the purchaser of the timber, to furnish cars upon which it was to be loaded.

It is said, however, that if the conduct of the parties is to be looked to, it does not appear that it was their intention that the taxes were to be paid by Morath. The facts with reference to this feature of the case were carefully collated in our briefs heretofore filed, and are all before the court. Nothing appears in the brief of counsel to justify us in changing our conclusion that the facts show that it was the intention of the parties that Morath should pay the taxes. The question of the deed relating back to the time of its delivery to the bank is discussed at some length by the counsel for appellee, and quite a number of authorities cited. These decisions are all founded on the fundamental principal laid down by Chancellor Kent, quoted in *State* v. *Murphy,* 16 A. & E. Annotated Cases, on page 1133, 4 Com. 454. This principle has been applied by the courts to various state of facts, and the deeds held to relate back in every case where equity and justice required it, and has not been limited to those cases alone where some disability had affected the parties, though it may find its most frequent application in that kind of cases. The doctrine announced by Chancellor Kent has been adopted by this court in *Harkreader* v. *Clayton,* 56 Miss. 383; *Simpson* v. *McGalthery,* 52 Miss. 723; *Whiteheld* v. *Harris,* 48 Miss. 710.

The last case is criticized, and said to not support the rule, but a careful reading of the opinion especially on page 719 brings us to the conclusion that it does support the rule, and we find that the court cites Chancellor Kent in support of its decisions. Under the rule so well established, it is very manifest that the deed in the instant case should be held to relate back, and take effect at the time of its first delivery, that is when delivered to the bank.

The law on the first and second propositions submitted by the court and the facts of this case irresistably lead to the conclusion that it was Morath's duty to pay the taxes,

and that Wood is in no way liable to him for the consequence of his failure to do so.

Moreover, the case of *Mohn* v. *Joslin,* 142 N. W., is so absolutely conclusive against any right of Morath to recover damages against Wood in this suit on a breach of warranty, and warranty alone, that counsel evades a discussion of it.

That the equities are all with Wood is not disputed, and a fair and candid view of the whole case seems to us to be that it was well understood that Morath should pay the taxes, and he ought not to now, after his negligence has brought him misfortune, be permitted to shift the responsibility to Wood. This being true, it is necessary that the deeds should relate back to the time of first delivery, in order to prevent injustice, and this would bring the case under the established rule in this, as well as other states; while taking the case as presented by the pleadings and decided by the lower court, a clean-cut suit on the warranty in the deed, it comes squarely within the rule in *Mohn* v. *Joslin,* and in either event the complainant Morath cannot recover.

*George Butler,* for appellee.

First: Whose duty was it in the light of *Walker* v. *Harrison,* 75 Miss. 665, and *Robertson* v. *Puffer Mfg. Co.,* 112 Miss. 890, to pay the taxes on the land? We stated in our original brief (paragraph five) the following: "The rule is universal that the lessor is bound to pay the taxes during the life of the lease. And as above pointed out, if this be construed as a contract for sale the vendor remained in possession and it was his duty to pay the taxes. 27 R. C. L. 542.

At that time we did not overlook the case of *Walker* v. *Harrison,* but as counsel for appellant in their reply brief did not take issue on this point, we deemed it unnecessary to enter into a discussion or explanation of *Walker* v. *Harrison.*

In 18 Enc. Law, in dealing with leases at page 650, the following statement is made: "Liability for and agreements relating to taxes. 1.   In General: All, general taxes and assessments imposed upon the lands, are in the absence of statutory or contract provisions to the contrary, to be paid by the lessor; but tenants for life are themselves bound to pay taxes, annually assessed upon the premises. 16 R. C. L.

In Taylor's Landlord and Tenant, section 341, it is said: "Another obligation which the law imposes upon a landlord, when the lease or statute imposing the tax is silent upon the subject, is the payment of all state, city and county taxes and assessments, which during the term may become chargeable upon the premises, as well as ground rent to which the property may be subject.   But this rule does not apply as to tenancies for life, in which the tenant is liable for taxes and similar annual burdens.   A covenant is sometimes introduced into the lease, by which the tenant undertakes to pay the taxes; but, in the absence of such a covenant, the tenant may pay them, and deduct the amount of them out of the rent, for the landlord is bound to protect his tenant from all paramount claims." Jones on Landlord and Tenants, section 412; Underhill on Landlords and Tenant, page 1106.

There is nothing in the case of *Walker* v. *Harrison* which in reality establishes a different rule in this state from that announced above.   The real question in that case was whether a tenant who was under no legal or contractual obligation to pay the taxes could acquire an outstanding tax title, existing before he entered under his lease; and the court very properly held, following *Nivers* v. *Nesmith,* 64 Miss. 807, that there was nothing to prevent the tenant from acquiring such outstanding title.

It is true that the court went further and said: "A tenant in the possession of land at the time of its sale for taxes, is under obligation to pay the taxes, and therefore cannot buy so as to obtain title as against his landlord. The land itself is, in fact, the debtor to the public and

*prima facie* it is the tenant's tax, because all the remedies are against him. Ordinarily, one who voluntarily pays the debt of another cannot recover the sum paid, but taxes paid by the tenant is not a voluntary payment. 1 Taylor's Landlord and Tenant, sec. 395; *Carter* v. *Carter,* 5 Bing. 406.

It is quite true that Taylor's Landlord and Tenant, in section 395 uses the language above quoted, but the most casual perusal of section 395, and the authorieties cited discloses that the author was discussing the obligation to pay taxes imposed upon the occupier, or tenant under an act of the British Parliment.

In the first place, without explanation, section 395 is in apparent direct conflict with section 341, of the same author, however, it will be noticed that in section 341 the author says that the obligation is on the landlord to pay in the absence of contract or statute.

In the second place, the cases of *Tinkler* v. *Prentice,* 4 Taunt, 549; *Gabell* v. *Phebal,* 5 Taunt, 81, cited as supporting the text in section 395 show that in those cases the court was dealing with the obligation imposed upon the occupier, or tenant to pay the taxes levied in the nature of an excise or income tax, under 46 Geo. 3, chapter 65, Schedule A. Woodfalls' Landlord and Tenant, 672-693. But this English rule does not obtain generally in this country. Mr. Woods in his work on Landlord and Tenant, page 683, states the English rule and points out the rule in some of the states in this country (page 685).

Again this court in *Walker* v. *Harrison,* as supporting the text above quoted cites the case of *Carter* v. *Carter,* 5 Bing. 406. In reality the Carter case does not support the text that case deals with ground rent and not taxes. Moreover it is predicated on the English statute. We take it, this is sufficient to show that the remarks of the court quoted in the above case were addressed to a point not involved and without the court giving consideration to the effect of the statutes of England.

Section 4256, Miss. Code of 1906, is as follows: Every lawful tax levied or imposed by the state, or by the county . . . is a debt due by the person or corporation owning the property . . . and may be recovered by action. Second: Can the conduct of the parties with reference to the payment of the taxes on the land be looked to as the construction put by them on the contract as to whose duty it was thereunder to pay the taxes? And if so, does it appear therefrom that it was their intention for the taxes to be paid by the lessee?

We do not think it proper to look to the conduct of the parties in determining whose duty it was to pay the taxes under this particular contract. The rule might have application if the contract was ambiguous as to whether that duty developed upon the tenant.

The intention of the parties in express contracts is in the first instance, embodied in the conditions which the parties have used and is to be deducted therefrom. If the contract is in writing the intention from the written conditions if possible. Page on Contracts, sec. 2023. But if a contract is ambiguous in meaning the practical construction put on it by the parties may be looked to even though the contract is in writing.

This same doctrine is announced in practically all of the text-books dealing with this subject and they all seem to hold that this method of construction should not be resorted to unless the contract is indefinite or ambiguous. 6 R. C. L., 852, 9 Cyc. 590, 13 C. J. 548-9; *Griffin* v. *Edward Eiler Lumber Company,* 84 So. 225, 122 Miss. 265.

The contract must be construed in the light of the existing law, imposing the liability on the landlord to pay the taxes and when so construed (or even if not construed) there is nothing in the conduct of the parties shown by the record in this case indicating that they practically construed the contract as imposing upon the tenant the obligation to pay the taxes in the first instance. 13 C. J. 549.

Third, without reference to the rule of relation back to the first delivery does the warranty cover defects in the title not in existence at the time of the execution of the deed. In this connection counsel are referred to *Mohr* v. *Joslin,* 142 N. W. 981, and *McMurtrey* v. *Bridges,* 137 Pac. 721.

We are not certain that we understand what the court has in mind by this question. We stated in our original brief: "The warranty speaks from the date of the delivery of the deed. The deed speaks from the date of the second delivery. It is well settled that an agreement to convey with warranty of title has reference to the condition of the title at the time the deed is to be made." 27 R. C. L. 517; Am. Ency. of Law, 727. The delivery of the deed to the bank by Wood passed no title to the appellee. *Harkreader* v. *Clayton,* 56 Miss. 384.

The deed speaks as from the second or re-delivery by the depository, or at least from the date when the purchase money had been paid and Morath had offered to reimburse Wood for taxes, insurance and expense incurred on the property during the life of the lease. *Harkreader* v. *Clayton,* 56 Miss. 384; 10 R. C. L. 635-640; 11 Enc. of Law, 345-350. The only exceptions to this general rule are to prevent manifest hardships. 10 R. C. L. 64.

In their reply brief counsel uses the following statement: "If there is yet a question in this case as to the time it will take effect, it will surely, as between the parties, come within the exception to the general rule noted in appellee's brief as laid down in 11 A. & E. Enc. Law (2 Ed.), page 346; *Harkroader* v. *Clayton,* 56 Miss. 383. To the effect that while a deed delivered in escrow generally takes effect after the second delivery, they are exceptional cases where it would relate back to the first. The exceptions are founded on necessity to prevent a failure of justice."

We had assumed that counsel conceded that the warranty in a deed delivered to a third party on condition that it should be delivered to the vendee upon the payment of the purchase price covered all defects and incumbrances

existing against the title at the time of the second delivery including defects and incumbrances accruing between the date of the deed and the second delivery, save and except certain exceptional cases which do not exist in the present case. The general rule undoubtedly is as stated in our original brief.

It is unnecessary to quote *in extenso* the text of these authorities. They hold in line with *Mohr* v. *Joslin,* 142 N. W. 981, and *McMurtrey* v. *Bridges,* 137 Pac. 721, that a deed of conveyance of real estate deposited with a third party to be delivered on the payment of the purchase price, takes effect as of the date of the second delivery or as of the date when the grantee becomes entitled to demand a second delivery and that the warranty in such cases speaks as of and from the date of the second delivery or the date the grantee becomes entitled to such delivery. Those authorities are in line with *Harkreader* v. *Clayton,* 65 Miss. 384.

As to the suggestion that the court might construe the deed as relating back and to have become effective on the first delivery we have only to say that according to the great weight of authority such deeds will not be related back except upon some unintended or unexpected occurrences, such as a disability in one of the parties at the time of the second delivery because of the existence of which the contract cannot be consummated. 10 R. C. L. 641, and authorities cited; *May* v. *Emerson,* 16 Am. Cas. 1129, and notes; *Whitfield* v. *Harris,* 48 Miss. 11, Enc. of Law, 348, 10 R. C. L. 641. The case of *Whitfield* v. *Harris,* 48 Miss. 710, does not support the text it is sometimes cited to support. It is another illustration of the court falling into error and making statements that had no application to the issue before the court.

The real question before the court was not that stated by the court at all. It is too plain for argument, that under the facts above stated the purchaser having entered into possession paid the purchase money and received the deed long before the judgments became liens against the property, was prior in point of time and prior in point of

right to the subsequently acquired liens.  So it is that the Harrison and no other case in Mississippi establishes the rule that the doctrine of relation back can be applied in any case where the grantor is able to make and the grantee to receive the deed, that is to say, is not disqualified, by some legal disability or death.  But however this may be, there is no reason in this case, legal, moral or equitable, why the deed should, by fiction of law, be made to relate back to the first delivery.

It is respectfully submitted that the case should be dealt with as indicated in our original brief.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree awarding the appellee damages for the breach of a warranty contained in a deed to certain land executed by the appellant to the appellees.  The bill of complaint alleges and the evidence discloses in substance that in July, 1913, the appellant and J. M. Brasher entered into the following agreement:

"The said Wood, upon the terms and conditions hereafter set forth and expressed, hereby leases unto Brasher the following described property situated in Pike county, state of Mississippi, referring to the revised map of McComb in said county, to-wit: All of lots Nos. four (4) and five (5), square S, Northern subdivision to McComb, said county and state—together with all buildings and improvements thereon.  This lease is made for the term, time, and space of sixty months, commencing on and running from the 15th day of July, 1913, at a monthly rental of twenty-one dollars and fifty cents per month payable on the 15th day of each and every month, as evidence of which said Brasher has made and furnished sixty rent notes drawn by himself to his own order and by himself indorsed dated July 15, 1913, and made payable for the sum of twenty-one dollars and fifty cents on or before the 15th day of each and every month, commencing on the 15th day of August, 1913, the last being payable on or before the

15th day of July, 1918, all stipulated to bear interest after maturity at the rate of eight per cent. per annum until paid. It is hereby agreed and stipulated that in the event said Brasher shall pay each and every one of said notes as the same falls due, and until the final payment of said entire series of notes, and shall reimburse and pay to said Wood all taxes, insurance, and necessary expenses which he may incur on said property from the 1st day of January, 1914, then in such event the Mechanics' Bank or any other bank at which the within-mentioned notes are left for collection is hereby authorized to deliver to said Brasher the warranty deed that is deposited with said bank, without any further payment or consideration whatsoever, the rental paid herein and costs reimbursed being a sufficient consideration for said sale and transfer.

"Said Brasher is hereby accorded the right and privilege to anticipate payment of any and all of said notes at any time, in which event he shall have the right and privilege to receive deed to said property in accordance with above conditions.

"Should said Brasher fail or refuse to pay any one of said notes when the same falls due, he shall *ipso facto* forfeit all right to purchase said property as hereinbefore set forth and all payments made hereunder shall be applied strictly towards rental only."

Upon the execution of this contract Brasher entered into the possession of the land therein described and Wood executed a general warranty deed conveying the land to Brasher and delivered it to the Mechanics' Bank of McComb for delivery to Brasher upon compliance by him with the terms of the contract. On the 28th day of September, 1915, Brasher, with the consent of the appellant, assigned all of his rights under the contract to the appellees, whereupon the appellant took up the deed he had deposited with the Mechanics' Bank of McComb for delivery to Brasher and executed another to the appellees and deposited it with the bank for delivery to the appellees

upon the compliance by them with the terms of Brasher's contract.

The taxes on the land due the city of McComb seem to have been paid by Brasher and the appellees, but the taxes thereon due the county and state were paid by the appellant, except for the year 1916, for which year the taxes were not paid, resulting in the land being sold by the tax collector and bought in by J. M. Holmes. The appellees complied with the terms of Brasher's contract with Wood and received the deed to the land which had been deposited by the appellant with the Mechanics' Bank of McComb. When Holmes' tax title matured, he made a demand on the appellees for possession of the land and was threatening to eject them therefrom, when they exhibited the original bill herein against him and prayed for the cancellation of Holmes' tax deed, and, if not entitled thereto, then to a recovery against the appellant on his warranty.

Each of the defendants to the bill answered; Holmes making his answer a cross bill in which he prayed for the confirmation of his title and for possession of the land. On final hearing the court below granted the prayer of Holmes' cross-bill and awarded the appellees a recovery against Wood on his warranty of title. Wood has appealed to this court.

The only ground on which the appellant asks for a reversal of the decree of the court below is that the warranty on which he is sued was not broken for the reason that it does not cover either liens for unpaid taxes accruing, or sales for taxes made, after the delivery of his deed in which it appears to the Mechanics' Bank of McComb for delivery to the appellees upon compliance by them with the terms of Brasher's contract. The real question for decision therefore is: When did the warranty become effective? Did it become effective when the deed was delivered by the appellant to the bank, or when the deed was delivered by the bank to the appellees? If in the first instance, the decree of the court below should be reversed; if in the latter, it should be affirmed.

In the absence of an agreement to the contrary, and there is none such here, an instrument held in escrow by a third person does not take effect until its final delivery unless in order to prevent a failure of justice it becomes necessary to make the second delivery relate back to the first and thereby cause the instrument to be effective from the first delivery. *Harkreader* v. *Clayton,* 56 Miss. 383, 31 Am. Rep. 369; *Simpson* v. *McGlathery,* 52 Miss. 723; *Whitfield* v. *Harris,* 48 Miss. 710. In each of these cases the holding that the deeds there in question were effective from the first delivery was for the protection of a grantee; but, assuming for the sake of the argument that the rule there applied can be invoked also for the protection of a grantor, what are the facts and circumstances which make it necessary to so hold here in order to prevent a failure of justice?

The contention of counsel for the appellant in effect is that under the contract between the appellant and Brasher it was the duty of Brasher, and under the contract between the appellant and the appellee it was the duty of the appellee, to pay the taxes on the land after they entered into possession thereof, that consequently the parties to that contract did not intend for the warranty therein to cover liens for unpaid taxes accruing or sales made after the delivery of the deed contracted for to the bank, which duty and intention can be made effective only by holding the deed to have become effective upon its delivery to the bank.

Three reasons are assigned in support of this contention: First, that the relation between the appellant and Brasher, and between the appellant and the appellee, under the initial contract, was that of vendor and purchaser; second, that if the relation between them was that of landlord and tenant, the appellant being the landlord and Brasher and the appellee being the tenants, it was the duty first of Brasher, and afterwards of the appellee, to pay the taxes on the leased premises for the reason that the law charges a tenant in possession of the leased premises with the duty of paying the taxes thereon; and, third, the

practical construction put upon the contract by the parties thereto as evidenced by their acts thereunder demonstrate that it was their intention for the taxes on the land to be paid by Brasher and the appellee.

1. The initial contract herein did not create the relation of vendor and purchaser between the parties thereto. That contract was a lease which provided that the lessee therein should receive a deed to the leased property upon compliance by him with the terms of the lease contract, thereby becoming the purchaser of the property. Such a contract is valid, and until the lessee therein becomes the purchaser of the land by complying with the terms of the contract, the relation between the parties is that of landlord and tenant. *Nobles* v. *McCarty,* 61 Miss. 456; *Puffer Mfg. Co.* v. *Dearman,* 97 Miss. 622, 54 So. 310; *Robinson Co.* v. *Weathersby,* 101 Miss. 724, 57 So. 983; *Robertson* v. *Puffer Mfg. Co.,* 112 Miss. 890, 73 So. 804.

The error of counsel for the appellant in this connection is in failing to distinguish between the relation of parties to a contract like the one here in question and to a contract by which the land is conveyed to the grantee with a provision therein that the grantee shall pay rent on the land in event of his failure to comply with certain stipulations of the contract.

2. In *Walker* v. *Harrison,* 75 Miss. 665, 23 So. 392, it was said that:

"A tenant, in the possession of land at the time of its sale for taxes, is under obligation to pay the taxes, and therefore cannot buy so as to obtain title as against his landlord. The land itself is, in fact, the debtor to the public, and *prima facie* it is the tenant's tax, because all the remedies are against him. Ordinarily, one who voluntarily pays the debt of another cannot recover the sum paid, but taxes paid by the tenant is not a voluntary payment."

This statement was merely by way of introduction to the question presented to the court for decision, and was no part of the decision itself; the question for decision being, not what was the obligation, if any, of a tenant in

possession to pay the taxes on the leased premises, but whether a tenant in possession could purchase the leased premises from a purchaser thereof at a tax sale made before the tenant went into possession of the premises. The rule intended to be there referred to, though erroneously stated, is simply that a tenant in possession may pay the taxes on the leased premises in order to prevent the sale of the premises therefor and look to his landlord for reimbursement of the money so expended. In the absence of an agreement between them to the contrary, a tenant is under no obligation to his landlord to pay the taxes on the leased premises. 1 Taylor on Landlord and Tenant (9th Ed.) section 341; Jones on Landlord and Tenant, section 412; Underhill on Landlord and Tenant, 1106; 16 R. C. L. 812; 18 A. & E. Ency. of Law, 650.

3. The rule that, where a contract is ambiguous, the practical construction placed thereon by the parties thereto as evidenced by their acts thereunder may be looked to in order to ascertain its meaning, cannot be invoked here, for the contract under consideration is plain and unambiguous and creates the relation of landlord and tenant without any obligation on the part of the tenant to pay the taxes. But, if the rule were otherwise, the fact that the appellant was reimbursed by Brasher and the appellee for the taxes paid on the land by him could hardly be held to prove that the parties thereto construed the contract to relieve the appellant from any obligation to pay the taxes on the land, for the contract expressly provides that the appellant should be so reimbursed before the deed should be delivered by the bank.

*Affirmed.*