JOSEPH DUNK *v*. STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Witnesses. Contradicting one's own. Hostile witness. Entrapped into introducing. Previous statements. Materiality.*

> The state cannot contradict its own witness by showing his previous statements, unless entrapped into introducing a hostile one, and in such case only by showing statements which are material to the main issue.

2. SAME.

> A district attorney, who calls a witness for the state without previous conference with him, cannot claim that he was entrapped and treat the witness as hostile, because his testimony is disappointing and not in harmony with what other persons had represented that it would be.

FROM the circuit court of Hancock county.

HON. WILLIAM T. MCDONALD, Judge.

Dunk, appellant, was indicted, tried, and convicted of the murder of one Nix, and was sentenced to death; he appealed to the supreme court from said conviction and sentence. The opinion states the facts upon which the case was decided by the supreme court.

*W. H. Maybin,* for appellant.

The court erred in admitting, over the objection of the defendant, the testimony of J. R. and T. E. Smith to contradict the testimony of Edgar Jones in reference to a statement not made by the defendant, but a statement made by Jones, a state witness, a statement made out of the hearing and out of the presence of the defendant. It is true that, after the district attorney had put Jones on the stand and discovered that Jones' testimony was not satisfactory, he claimed that he was surprised, but that does not cure the error, because it was matter that could not have affected the guilt or innocence of the

defendant, and yet, in permitting it to go to the jury, was prej-udicial to the defendant.

*J. N. Flowers,* assistant attorney-general, for appellee.

The district attorney had been informed that one Edgar Jones would testify that he saw Dunk immediately after the killing and that he had a pistol in his hand. Dunk had been on the stand and testified that he did not have a pistol that afternoon. Jones was called as a witness for the state in rebuttal, and instead of saying that he saw Dunk with a pistol in his hand said Dunk did not have a pistol. The district attorney showed that he was taken by surprise, since he had had good reason to believe the witness would swear to the same thing he had told the two Smiths. He then put the Smiths on the stand and proved what Jones had told them. All this was permitted under the rule which affords parties some means of protection from designing or unreliable witnesses. It was for the presiding judge to determine whether the district attorney was taken by surprise. The action of the court in admitting this testimony was not error.

Argued orally by *W. H. Maybin,* for appellant.

TRULY, J., delivered the opinion of the court.

Appellant and William Parker were jointly indicted for murder. Severance was granted, and appellant placed on trial. The theory of the defendant on the trial was that the deceased came to his death in a single-handed mutual combat with Parker, the party with whom he was jointly indicted, and that he (the appellant) in no wise participated in the difficulty; that he was not immediately present at the time the shooting occurred, having left the scene when it became apparent that a difficulty was impending; and that he was not armed at the time. After the testimony in chief of both state and appellant had been introduced, the state called Edgar Jones as a witness in rebuttal, and sought to prove by him that he had arrested

the appellant immediately after the shooting, and that, when arrested, appellant had a pistol in his hand. Questions tending to elicit this proof, when propounded to the witness, were answered in the negative; and, while testifying to the fact of the arrest, he positively denied that the appellant had any weapon in his possession. Whereupon the district attorney claimed that he was surprised by the testimony of the witness, and was permitted, over the objection of appellant, to ask the witness if on the day of, and shortly after, the homicide, he had not stated to J. R. Smith and T. E. Smith that immediately after the shooting he had arrested the defendant, who at that time was armed, and had a pistol in his hand. The witness Jones denied having made such a statement. Thereupon the district attorney introduced said J. R. Smith and T. E. Smith, who both testified that Jones told them on the occasion in question that defendant had a pistol in his hand when arrested immediately after the shooting. One of the Smiths stated that "Jones told me that he got down there and threw his gun on Joe Dunk when he shot Nix." This portion of the statement was by the court excluded, but the other part of the testimony, over the repeated and earnest objections of counsel for defendant, was submitted to the jury for their consideration. We are at a loss to understand upon what reasoning this testimony was held to be competent. Had Jones been a witness for the defendant, and denied the statement attributed to him, still he could not have been impeached about a matter purely collateral to the main issue. It will hardly be contended that the state could rightfully have proven as a part of its case in chief that Jones had made this statement, for this would be hearsay, pure and simple. Whether Jones in fact made the statement was an irrelevant inquiry, not a substantive, probative fact relevant to the real issue involved, which was the guilt or innocence of the defendant. It tended neither to prove nor disprove any hypothesis arising out of the evidence, and was not a proper subject for contradiction. We can add nothing to the admirable and

unanswerable reasoning of the court in *Williams* v. *State,* 73 Miss., 820 (19 South., 826), where this whole subject is most elaborately treated, and the admission of testimony contradictory of collateral issues condemned. In the case at bar the rights and interests of the defendant were lost sight of by the state, and the question of his guilt or innocence of murder was made dependent, in a certain sense, upon the jury's decision as to the veracity of the witness Jones. And yet, even if it be conceded that Jones committed perjury, this furnished no additional legal reason why appellant should have been sentenced to death. The general rule is that a party cannot attack the credibility of a witness introduced by himself. In the interest of fairness and justice, and to prevent parties litigant being defeated of their just rights by trickery, certain exceptions have been ingrafted on this rule; and, while a party may never impeach the general reputation of a witness whom he introduces in certain cases, when manifestly he has been entrapped into introducing a hostile witness, and is obviously surprised by the testimony, he is not bound thereby, and may show contradictory statements previously made by the witness. But even in such cases the contradictory statements must have been about a matter material to the real issue involved in the cause. In the instant case the district attorney had never heard the witness make any statement, but, depending on the story of others, introduced him without previous conference. He was therefore not entitled to invoke the rule devised to protect those who are entrapped by hostile or corrupt witnesses. The district attorney was probably disappointed by the testimony, but he had been neither misled nor entrapped by the witness. It is only in a rare and exceptional case, if ever, that a district attorney, whose duty it is to see that exact and even-handed justice is dealt out to all alike—to see that the innocent are protected and the guilty alone punished—should be permitted to attack the credibility of his own witness. Manifestly such course, under the facts disclosed by this record, constitutes reversible error. *People*

v. *Safford,* 5 Denio, 112; *Dixon* v. *State,* 86 Ga., 754 (13 S. E., 87). Not only was the testimony subject to the objections indicated, but it was further prejudicial to appellant, and militated against his rights, in this: It cast upon his defense as presented to the jury the suspicion that his story of the homicide was false and concocted for the occasion, and that the witness Jones was endeavoring to befriend him by corruptly concealing the truth. The gravity of the error becomes more manifest when the circumstances attendant upon the homicide and the environment of the appellant are considered.

*Reversed and remanded.*