[Civ. No. 4850. Third Appellate District.—October 10, 1933.]

ANTONIE FISCHER, Respondent, v. E. W. HAVELOCK et al., Defendants; THE TEXAS COMPANY (a Corporation), Appellant.

Charles Kasch for Appellant.

Mannon & Brazier for Respondent.

PLUMMER, J.—The plaintiff had judgment for damages against the defendants in an action tried by the court sitting without a jury, on account of injuries received in an automobile collision with a truck driven by the defendant Havelock, found by the court to be acting as the agent of the Texas Company. No issue is raised as to the liability of Havelock, nor as to the amount of damages awarded by the court. The Texas Company bases its appeal on the theory that Havelock, at the time of the collision, was an independent contractor.

The record shows that at all the times referred to in this appeal Havelock had charge of the distribution and sale of Texaco products, including gasoline, kerosene, oils, etc., kept by the company at Ukiah, whether in tanks belonging to the company, or belonging to Havelock does not appear. The gasoline, kerosene, oils, etc., belonged to the Texas Company, none of which was purchased by Havelock, but he was authorized to make sale thereof for cash and on credit to purchasers whose credit rating was first approved by the company. In the event that Havelock made any sale on credit to anyone not so approved by the company, he became personally liable. The prices at which sales of products could be made were at all times fixed by the Texas Company. Havelock was authorized to make collections and remit the same from time to time to the company. He was not allowed to retain any amount collected by him, for and as his compensation. Havelock was paid on a commission basis, with a guaranteed compensation of $200 a month. Havelock furnished his own truck, which was lettered so as to show he was delivering Texaco products. On the day of the injury, Havelock had gone to Willetts to deliver gasoline for the Texas Company, to a purchaser by the name of Hall. Hall was a customer of the company, buying on credit, who had been obtained as a customer prior to the appointment of Havelock as its distributing agent at Ukiah. The collision

occurred as Havelock was returning after making delivery of gasoline to Hall.

The agreement entered into between Havelock and the Texas Company, by which Havelock was employed as distributing agent for the company, was and is in writing, and among other things contained the following: "First: The Company hereby appoints the agent (and the agent hereby accepts the appointment), as agent for the Company, at Ukiah, California. The agent's surety bond will be $1,500.00. Second: The agent's duties are fixed by this agreement, the rules and practices of the Company, and by instructions issued by the company from time to time. Third: The agent shall strictly observe and obey the Company's instructions, and faithfully perform all duties connected with his agency. Promptly, correctly and in strict accordance with Company's instructions, account for all Company moneys, goods, products, equipment, etc., in his possession, or coming into his custody, and pay the Company for any shortages which may develop at any time. Sell the products of the Company for cash, or on credit properly authorized, and not exchange or agree to exchange the Company's products for property or merchandise for private use or account; personally pay the Company on demand (a) the sum due on any account opened by him without authority, and (b) any portion of any credit account which has been sold in excess of the credit limit placed thereon by the Company. The Company shall not be under any obligation to make any attempt to collect such accounts nor to assign any part of such accounts to agent until the Company shall have received full settlement thereof. Neither (a) sell the Company's products, directly or indirectly, at less than Company's authorized prices, nor (b) enter into any secret agreements, contracts, or understandings with any customer or competitor for the purpose of reducing the prices of the product or controlling business."

The agreement further provided that the agent was not to use the company's goods, nor funds for his own private purposes, and not to cash, out of the company's funds, personal checks for customers or others. The agent was not to retain his compensation out of the sales made by him, but all moneys were to be remitted to the company. It was further provided in the agreement that the agent should

furnish a truck or trucks and employ his own assistants. The agent was also required to furnish a bond, covenanted to "indemnify and save the Company harmless from loss arising out of, or by virtue of all damages to property, or injury to persons . . . occasioned by the acts of the agent, his assistants or employees". The agent was also required not to employ any assistant who was not of mature age, etc., to handle, ship or deliver any gasoline, etc. The company paid all freight and charges on the goods shipped, and covenanted to pay the agent a certain commission guaranteed to equal the sum of $200 a month. The agreement specified that it was to continue in full force and effect until terminated by either party on five days' written notice.

The foregoing summary of the testimony and of the agreement shows that Havelock was the sales agent for the Texas Company at Ukiah, authorized to make sales of its products for cash, and also upon credit, to customers whose credit rating had been first approved by the company. Havelock did not purchase any of the products belonging to the Texas Company, but simply received and made sales thereof. His duty was to sell and deliver the products of the company to all cash customers, and to credit customers approved by the company. The route that he should travel was left optional by the company. Havelock was required to obey the company's instructions, and faithfully perform all duties connected with the agency. Havelock's duties were fixed, and he was subject "to the rules and practices of the Company and instructions issued by the Company from time to time". What rules and instructions were issued by the company governing the acts of Havelock do not appear in the record.

The trial court held Havelock to be the agent of the company and acting for the company in the distribution of gasoline at the time of the collision, and therefore entered judgment against the appellant on the principle of *respondeat superior*. The correctness of this holding is the only question for us to determine.

In its appeal, the appellant has cited a number of cases holding similarly to the conclusions reached in the case of *State Compensation Insurance Fund, Petitioner,* v. *Industrial Accident Commission of the State of California and Auguste Marc, Respondents,* 216 Cal. 351 [14 Pac. (2d) 306], opinion filed September 16, 1932. Most of the cases

cited by appellant are therein set forth and considered, and need not be listed here. A review of the cases cited by the appellant discloses that there is a distinct principle or dividing line between the cases holding the person charged with the commission of the tort as an independent contractor, and as an agent, and by this principle we think our decision must be determined. It is this: Where the one sought to be charged as principal has sold its products to the person distributing those products, and exercises no further control, the relationship is not one of principal and agent, but the person to whom the products are sold is an independent contractor. This is fully illustrated in the cases where it has been sought to charge newspaper publishing companies where they have sold their papers outright to persons controlling and operating routes for the distribution of such papers. In such cases the relationship of principal and agent is denied. ■ When, however, a person is simply appointed as a sales agent, acting under the instructions and directions of the person owning the products, the products to be sold for cash, or to authorize credit customers, routes selected by the agent, the relationship of principal and agent is held to exist. The right to control is one of the governing principles. Whether that control is exercised or the directions given is immaterial. In the case at bar, Havelock owned none of the products belonging to the appellant; his duties were fixed by the agreement, the rules and practices of the company, and instructions issued from time to time. Whether these rules and practices or instructions were given or furnished to Havelock is wholly immaterial. The right to do so is specifically given, and the cases are uniform to the effect that the right to direct and control is all that is necessary to support the conclusion that the relationship of principal and agent exists where one is simply a sales agent selling goods of another, whether upon commission or upon a fixed salary. ■ The fact that the agreement called for a five days' notice before the discharge of Havelock by the Texas Company does not in anywise limit or change the relationship existing between the parties. The fact that Havelock owned the truck which he was driving at the time of the collision and at the time of the injury to the plaintiff does not relieve the Texas Company, as princi-

pal, from liability. (*Cook* v. *Sanger,* 110 Cal. App. 90 [293 Pac. 794].)

The circumstances surrounding the instant case are almost identical with those presented to the Circuit Court of Appeals for the Eighth Circuit, in the case of *Standard Oil Co.* v. *Parkinson,* 152 Fed. 681. The only difference between the two cases is that Havelock owned the truck involved in the collision, and in the Parkinson case Parkinson owned the team he was driving and the company owned the truck. The language of the Circuit Court, in its opinion, is so pertinent here that we set forth the following quotation as conclusive upon this appeal:

''The test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the casual act or omission at the very instant of the act or neglect. There can be no recovery of a person for the act or omission of his alleged servant under the maxim, *'respondeat superior',* in the absence of the right and power in the former to command or direct the latter in the performance of the act or omission charged, because in such a case there is no superior to respond. (*Brady* v. *Chicago & Great Western R. Co.,* 114 Fed. 100, 107 [52 C. C. A. 48, 55, 57 L. R. A. 712]; *Atwood* v. *Chicago, R. I. & P. R. Co.,* (C. C.) 72 Fed. 447; *Byrne* v. *Kansas City etc. R. Co.,* 61 Fed. 605 [9 C. C. A. 666, 24 L. R. A. 693]; *Hilsdorf* v. *City of St. Louis,* 45 Mo. 94, 98 [100 Am. Dec. 352]; *Town of Pawlet* v. *Rutland & W. R. Co.,* 28 Vt. 297, 300; *Miller* v. *Minnesota etc. R. Co.,* 76 Iowa, 655, 659 [39 N. W. 188, 14 Am. St. Rep. 258]; Wood, R. R., par. 388; *Donovan* v. *Construction Syndicate,* (1893) 7 Q. B. Div. 629; *Rourke* v. *Colliery Co.,* 2 C. P. Div. 205.) But a master is liable for damages caused by the negligence of his agent or servant within the scope and in the course of his employment, although he neither directs nor is aware of his acts. (*Philadelphia & Reading R. Co.* v. *Derby,* 14 How. 468, 486 [14 L. Ed. 502]; *Singer Mfg. Co.* v. *Rahn,* 132 U. S. 518, 522 [10 Sup. Ct. 175, 33 L. Ed. 440].) In the light of these rules of law, let us see whether or not there was any substantial evidence in this case that Perry was the agent of the Oil Company in the act of driving his team upon the track of the Railroad Company. There was testimony to the existence of these facts: The Oil

Company had storage tanks at Aurora, in the state of Nebraska, whence its oil was hauled by Perry's team to its customers in neighboring towns. The company owned the wagon and Perry the horses. The company fixed the prices of the oil and gasoline. Perry took them from the storage tanks, hauled and delivered them to the customers of the company in neighboring towns, sold all that he could in lots of 50 gallons each to others, collected all the money for these deliveries and sales, remitted it to the company weekly, and once a month the company paid him one cent for each gallon so delivered and sold. He devoted the principal part of his time to this occupation. He was not engaged for any specific length of time, and he was free to abandon the work, and the Oil Company was at liberty to discharge him at any time. The company directed him to keep its customers in four towns supplied with oil and gasoline, but it did not direct him when or by what routes he should draw these articles to them. He went to the customers whenever they needed the oil or gasoline which he supplied. Some time after Perry entered upon his work the company directed him to deliver oil to its customers at another town, Phillips, and he did so. He was on his way to Phillips when the accident which caused this suit occurred. By means of the horses and wagon he kept the customers in the towns it specified supplied with oil and gasoline, pursuant to its directions. But he determined when, how and by what roads he would drive his team to each town and customer.''

The judgment of the trial court is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 1, 1933.