TEXAS Co. *et al. v.* JACKSON.

(In Banc. Feb. 3, 1936.)

[165 So. 546. No. 31960.]

Leftwich & Tubb, of Aberdeen, and Blair & Anderson, of Tupelo, for appellant.

Geo. **T.** and **Chas. S. Mitchell,** of Tupelo, for appellee.

744

Argued orally by **C. L. Tubb**, for appellant, and by **Geo. T. Mitchell**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellee recovered a judgment against the appellants for a personal injury. The declaration alleges, in substance, that the appellee was a servant of the appellants, and that he was injured while driving an automobile truck for them in the course of his employment, because of a defect in the steering wheel thereof.

The Texas Company was engaged in selling and distributing gasoline products from a bulk sales station, of which Gober was in charge acting for the company, whether as its agent or as an independent contractor being one of the questions here for decision. Gober employed the appellee to drive a truck owned by him (Gober) for the purpose of delivering the Texas Company's products. On the occasion in question the appellee drove this truck in making a delivery of the Texas Company's products, and while returning to the bulk sales station, still driving the truck, he received the injury of which he complains.

The rim of the steering wheel of this truck was in three sections mortised together. Two or three days prior to the infliction of the appellee's injury he discovered that these sections of the rim of the steering wheel on the truck were loose at the joints. He called Gober's attention thereto, and Gober told him to continue to drive it and that he would have the wheel repaired. This Gober failed to do. While driving the truck, returning from making a delivery of the Texas Company's products, the appellee came to a section of the road on one side of which was a ditch; he there met two automobiles ap-

proaching him from the opposite direction, one behind the other. Just before he passed the first automobile the second one suddenly turned into that portion of the road in which the appellee was driving, necessitating his having a head-on collision with it or turning quickly out of the way. He decided upon the latter course and escaped a collision, but, according to his testimony, when he attempted to turn the steering wheel so as to come back into the road, the rim broke into three pieces, preventing his deflecting the course of the truck, and resulting in it running into the ditch, striking a telephone or electric light post therein, and seriously and permanently injuring the appellee. In this he is corroborated by other witnesses who saw the occurrence, but who did not know whether the steering wheel broke before or after the truck went into the ditch. The truck was seriously damaged, and the steering wheel was seen to be broken by persons who came immediately to the appellee's rescue.

One of the assignments of error is that the court below should have granted the appellants' request for a directed verdict as to both appellants on the ground that the evidence is insufficient to warrant a verdict for the appellee, and for the Texas Company on the ground that the appellee was not its servant, but was the servant of Gober, who, the company says, was an independent contractor.

The first of these grounds is so wholly untenable as to require no further discussion thereof, so that we come at once to the separate contention of the Texas Company. The question there is whether or not Gober and those employed by him to assist him in distributing the Texas Company's products were its servants. The contract under which Gober was acting for the Texas Company appointed him as its agent for the sale and distribution of its products at and from a designated bulk sales station. He was authorized to employ persons to assist him in the discharge of his duties under the contract, and he did employ the appellee for that purpose. This contract is

identical with that under consideration in Texas Co. v. Mills, 171 Miss. 231, 156 So. 866, 870, but for convenience the pertinent portions thereof will be again set forth here:

"Commission and Agency Agreement.

"Agreement, dated May 1st, 1933, between The Texas Company, a Delaware corporation, having an office and place of business at New Orleans, La., hereinafter called the Company, and R. L. Gober of Tupelo, Miss., hereinafter called the Agent: Witnesseth:

"First: The Company hereby appoints the Agent, and the agent hereby accepts the appointment, as Agent for the Company at Tupelo, Miss., The Agent's surety bond will be Twenty-five Hundred Dollars ($2,500.00).

"Second: The Agent's duties are hereby fixed by this agreement, the rules and practices of the Company, and by instructions issued by the Company from time to time.

"Third: The Agent shall:

"(1) Strictly observe and obey the Company's instructions and faithfully perform all duties connected with his agency.

"(2) Promptly, correctly and in strict accordance with Company's instructions, account for all company moneys, goods, products, equipment, etc., in his possession, or coming into his custody, and pay the company for any shortages which may develop at any time.

"(3) Sell the products of the Company for cash, or on Credit properly authorized, and not exchange or agree to exchange the Company's products for property or merchandise for private use or account; personally pay the Company on demand (a) the sum due on any account opened by him without authority, and (b) any portion of any credit account which has been sold in excess of the credit limit placed thereon by the Company. The Company shall not be under any obligation to make any attempt to collect such accounts nor to assign any part of

such accounts to Agent until the Company shall have received full settlement thereof.

"(4) Neither (a) sell the Company's products, directly or indirectly, at less than Company's authorized prices, nor (b) enter into any secret agreements, contracts or understandings with any customer or competitor for the purpose of reducing the price of the product or controlling business.

"(5) Not use the Company's goods or funds in any way for private purposes and not cash out of the Company's funds personal checks for customers or other persons.

"(6) Not retain the amount of compensation due him from the Company from or as a charge against funds or any other property of the Company for which he is accountable.

"(7) Bear all expenses, except those mentioned in Section '(3)' of Clause 'Fourth,' incident to the proper operation of the Station covered by this agreement, including, without limiting the foregoing, (a) cost of painting, lettering and general maintenance of the bulk station facilities, service station facilities, trucks, miscellaneous equipment, when owned by the Agent; and (b) cost of handling and installing gasoline and lubricating oil pump and tank equipment, whether or not said equipment be owned by the Company, which installation and handling by the Agent, if the Company owns the equipment, shall in no manner affect the Company's title.

"(8) At his expense, furnish trucks and other equipment when not supplied by the Company, in strict accordance with the Company's standards for such equipment.

"(9) At his expense, furnish all assistants and employés he may require for the proper and diligent operation of said station, and assume full direction and control over and responsibility for all such assistants and employés, and indemnify and save the Company harm-

less from loss arising out of or by virtue of all damage to property and/or injury to persons (whether or not such injury result in death) occasioned by the acts of the Agent, his assistants and/or employés.

"(10) Not permit any assistant or employé or other person who is not of mature age and judgment to fill, handle, ship or deliver any refined oil or gasoline at or from the Agent's plant, store rooms or vehicles.

"(11) Not assign this agreement without the proper written consent of the Company.

"Fourth: The Company shall:

"(1) Have the right at its option to withhold any commissions, moneys or anything of value in its possession belonging to or due Agent, for the purpose of reimbursing itself for any amounts due hereunder from Agent at any time.

"(2) In event of termination of this agreement, have ninety days thereafter in which to remove its products and other properties from the premises the Agent owns or controls, and have the right to use the Agent's storage for a period not exceeding three months upon payment of a rental of $5.00 per month for the period so used.

"(3) Pay (a) freight on products shipped, (b) license fees assessed for operation of main station and (c) taxes on Company's merchandise, stock and equipment.

"(4) Pay the Agent the following commissions, based on less than carload sales and transfers."

The contract then stipulates the commissions the agent shall receive for selling the company's products, and provides that:

"Seventh: The right of either party to require strict performance by the other hereunder shall not be affected by any previous waiver, forbearance or course of dealing.

"Eighth: (1) This agreement shall continue in full force and effect until terminated by either party."

In Texas Co. v. Mills Case this contract was held to create the relation of master and servant not only between the Texas Company and its agent appointed thereby but also between that company and the persons em-

ployed by the agent to assist him in the discharge of his duties under the contract. It controls here unless this case can be distinguished from it on its facts. The only fact in which they differ is this: In the Mills case the premises on which the bulk sales station was conducted were owned by the Texas Company; here the premises were owned by Gober. Rogers v. Lewis (Miss.), 144 So. 373, is cited by the Texas Company in support of its claim that this fact differentiates the two cases. In that case an agent was appointed by the Texas Company by a contract identical in terms with the one here. One employed by this agent to assist him in the discharge of his duties under the contract negligently injured another in driving a truck owned by the agent, while making a delivery of the Texas Company's products. In reversing a judgment against that company therefor the court, in a memorandum opinion without setting forth or discussing the provisions of the contract, said: ''Applying the law as found in our decisions to the fully developed facts as disclosed by the record, we are of the opinion that the relation between the driver of the truck and the appellant Texas Company was not such as to be sufficient to make out a case of liability against the said company.''

In Texas Co. v. Mills, we said: ''But it is said by the appellant that this court held otherwise in Rogers v. Lewis, 144 So. 373, wherein this appellant was a party and the contract under consideration was practically identical with the one here. If the Rogers case is in conflict herewith, we would not adhere to it; but it is not necessary for us to determine that question, for the record in that case discloses one fact that is not here present which may distinguish it from this case, as to which we will not express an opinion until a case arises wherein that fact appears. In that case the premises on which the appellant's products were stored, and from which they were distributed by its agent, belonged to the agent and not to the appellant, while here such prem-

ises were the property of the appellant, and not of the agent.''

Quite a number of matters of fact enter into the determination of whether one acting for another is a servant or an independent contractor, one of which is ''whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work.'' Texas Co. v. Mills, supra; 1 Restatement, Agency, sec. 220. This fact is not of itself controlling; it is consistent with the relation of master and servant, and is of evidential value only. Texas Co. v. Mills, supra; Caver v. Eggerton, 157 Miss. 88, 127 So. 727; 1 Restatement, Agency, Comment on section 220, at page 488. The ultimate question for decision is whether the physical conduct of the employee in the performance of his duties is controlled, or is subject to the right of control, by the employer. The relation of master and servant arises out of contract, express or implied, 39 C. J. 33; Louis Werner Sawmill Co. v. Northcutt, 161 Miss. 441, 134 So. 156; Gulfport, etc., Co. v. Faulk, 118 Miss. 894, 80 So. 340, and, if the contract of employment expressly gives this right of control to the employer, then the relation of master and servant is created without reference to the ownership of the instrumentalities used by the employee in the performance of his duties or the place at which he performs them. That the employee may terminate the contract at pleasure or on notice may be material when determining the relation between him and his employer, in the absence of an express contract creating that relation, Gulf Refining Co. v. Nations, 167 Miss. 315, 145 So. 327, but, when the contract itself creates the relation, it continues until the contract is terminated.

Rogers v. Lewis, supra, will now be expressly overruled in so far as it holds that a contract like the one here under consideration does not create the relation of master and servant, and Texas Co. v. Mills, supra, will be here followed.

The Texas Company offered, but was not permitted to introduce, evidence to the effect that it had not exercised, or attempted to exercise, any supervision over Gober or his assistants in the performance of their duties under the contract. This ruling is challenged by counsel for the Texas Company but with little argument, and the citation of no authorities, in support of the challenge. The evidence of the practical construction placed by parties on their contracts is admissible as an aid in its interpretation when the contract is ambiguous or its meaning not clear, but, when the contract is plain and unambiguous, such evidence is not admissible. Wood v. Morath, 128 Miss. 143, 90 So. 714; 1 Restatement, Contracts, sec. 235, comment on clause (e); 22 C. J. 1179; 39 C. J. 42. The contract here under consideration is plain and unambiguous and unmistakably creates the relation of master and servant. The creation of the particular relation between an employer and employee is within the absolute control of the parties when they enter into a contract therefor, and, if it creates the relation of master and servant, the master cannot avoid its consequences by refraining from exercising the powers thereby conferred on him, although he does so under the belief that the contract did not create the relation. 1 Restatement, Agency, comment on subdivision (2) of section 220, at page 490.

The appellee was placed and remained in a hospital for some time after his injuries. In response to a question as to "whether or not you had any mental worries" while at the hospital, he answered, over the objection of the appellants: "I had plenty for I didn't have anything but this little income there and I had a family there—I had that to study about, my folks there without anything and me where I couldn't make anything." We will not undertake to determine whether this evidence is within or without the rule permitting evidence of mental anguish accompanying a physical injury, for, if we should hold that it is without the rule, we would not reverse, for

the verdict on liability is plainly correct, and the amount of damages awarded indicates that the jury could not have been influenced thereby, the damages being very much less than the jury could have awarded.

The appellee introduced a physician who treated him. He testified as to the character and extent of appellee's injuries. On cross-examination this physician was asked whether or not the appellee made a statement as to how the accident occurred, to which he answered: "He said he was coming north from down the road somewhere and about five in the afternoon there was three cars, two coming south and a fast car seemed to be coming between him and a car with some women in it, and forced him in the ditch, said he took the ditch rather than hit the car."

The appellee, in rebuttal, testified, over the appellants' objection, that what he told the physician was: "I was forced off there on the side, but would have got back if I hadn't tore up my steering wheel, and if he said I didn't make the other statement he was just mistaken." The ground of the objection to this testimony is that it impeached the credibility of a witness introduced by the appellee himself.

Dunk v. State, 84 Miss. 452, 36 So. 609, relied on by the appellants, is not here in point. In that case a witness was introduced by the district attorney to prove a fact material to the issue being tried. His testimony was not that expected from him by the district attorney. Whereupon he asked the witness if he had not made statements to others out of court which differed from the testimony he was then delivering, to which the witness answered that he had not. The district attorney then introduced, over the defendant's objection, two witnesses who both testified that the state's witness had made statements to them contradictory to what he had testified. This evidence was held to have been wrongly admitted for two reasons: First, whether the witness had made contradictory statements out of court was not a fact material to the

issue being tried; and, second, that, if they were, it did not appear that the district attorney had been entrapped into introducing him. It will be observed that the district attorney's sole purpose there was to impeach the credibility of his witness.

In the case at bar, the physician's testimony contained by necessary implication an admission by the appellee that his injury was not caused by any defect in the steering wheel of the truck. Whether his injury was so caused was the most material fact to be determined by the jury, and an admission by him that it was not would necessarily have great weight with it in reaching a conclusion thereon. Had the physician been introduced by the appellants, there could, of course, be no question of the appellee's right to contradict it by testimony as to exactly what he did say to the physician; that the physician was introduced by him does not destroy his right so to do, for the rule, as stated in Fairly v. Fairly, 38 Miss. 280, is "that if a witness state facts in his testimony which make against the party calling him, that party may contradict him as to facts which are material evidence in the cause, by the introduction of other witnesses; for the object of the additional evidence is not to impeach the first witness, but to prove material facts in the cause, the impeachment of his credit being merely incidental and consequential." To the same effect see 2 Wigmore on Evidence (2 Ed.), sec. 907. The evidence here under consideration does not violate the rule invoked by the appellants.

The court below charged the jury for the appellee that he "was an employee of the said defendants, the Texas Company, Incorporated, and R. L. Gober, at the time he received the injuries in question." Appellants' objection to this instruction is that whether the appellee was in the employ of the Texas Company was one of the issues to be decided by the jury. As has been hereinbefore made to appear, the answer to that question rests solely on

Gober's contract with the Texas Company, which contract we have said created the relation of employer and employee, more specifically of master and servant, not only between the Texas Company and R. L. Gober, but between the Texas Company and those employed by Gober under the contract to assist him in the discharge of his duties.

From what has been hereinbefore said, it is clear that the appellants' motion for a new trial on the ground that "the overwhelming weight of the evidence is against the verdict and judgment" is without merit. The verdict of five thousand dollars, as hereinbefore stated, was not excessive, but was less than the jury could have awarded on the evidence, and there is nothing in the evidence warranting the jury to believe that the appellee was guilty of any negligence that contributed to his injury; and under section 513, Code of 1930, the appellee did not assume the risk of driving the truck with knowledge of the defect in the steering wheel thereof, particularly when his employer, through Gober, had promised to repair it.

Affirmed.

**Anderson, J.,** did not participate in the decision of this case.

**Griffith, J.,** delivered an opinion specially concurring.

The case of Rogers v. Lewis (Miss.), 144 So. 373, was correctly decided upon the precise facts present in that case, but, because of the exceptional facts there disclosed, only a memorandum opinion was written. Mr. Rogers was the only witness in that case as to the facts regarding his contract with the Texas Company and as to the construction put upon it by him and the company. His testimony was undisputed and was received without objection. He stoutly contended that under the construction placed upon the contract by him and by the company, and in his en-

tire operations under it, for the entire time of its existence, for more than two years, he had handled the operations in respect to the physical conduct thereof at his sole control and without any directions or suggestions whatever from the company, and that even as to the trade practices he held himself bound by instructions only so far as deemed reasonable by him, and of the reasonableness he was the sole judge, and that this attitude on his part had been regarded by the company as within his rights under their contract. He stoutly maintained that for these reasons the company was in no way liable in the case and that, if there were any liability, it was solely his and not that of the company. He had a solvent appeal bond given separately from the company, and he filed a brief precisely setting forth the facts and his attitude in respect to any liability as above stated.

It follows therefore that, upon the precise facts, undisputed and admitted in evidence without objection, that case was decided in accordance with the exact justice of the case as between the parties and as disclosed by that particular record. But, because the opinion was only a memorandum opinion and without disclosing in detail the particular and precise facts, it has been constantly used in cases of this general class as committing this court to the contrary of what is held in the main opinion in the case now before us; for which reason I am in accord with the advisability, from a practicable standpoint, of simply overruling Rogers v. Lewis, so that it may no longer be used in the general run of these cases.