Argued June 18; affirmed July 7, 1936

# JOHNSON *v.* STEELE
(59 P. (2d) 237)

*Wendell K. Phillips,* of Portland (Sheppard & Phillips and Willis Potter, all of Portland, on the brief), for appellant.

*Lon Bass,* of Portland (James H. McMenamin, of Portland, on the brief), for respondent.

ROSSMAN, J. The appellant (one of the three defendants) does not question the sufficiency of the evidence to establish negligence, proximate cause and the

awarded damages, but contends that the record contains no substantial evidence indicating that the defendants Steele and Bewley, mentioned in the preceding statement of facts, and who were the sole occupants of the truck which collided with the car in which the plaintiff was riding, were appellant's agents. It further contends that if a conclusion is warranted that these two individuals were the agents of the appellant, the record contains no substantial evidence indicating that on June 10, 1934, when the truck collided with the car, the two men were acting with the scope of their authority and in furtherance of the business of their principal.

November 22, 1933, the appellant and the defendant E. T. Steele signed an instrument entitled "Commission Agency Agreement" which, after referring to the appellant as a California corporation, and to Steele as being "of St. Helens, Oregon (hereinafter called the 'Agent')", provides:

"The Company hereby appoints the Agent, and the Agent hereby accepts the appointment, as Agent for the Company at St. Helens, Oregon. The Agent's surety bond will be Two thousand and no/100 Dollars ($2,000.00).

"The Agent's duties are hereby fixed by this agreement, the rules and practices of the Company, and by instructions issued by the Company from time to time.

"The Agent shall:

"(1) Strictly observe and obey the Company's instructions and faithfully perform all duties connected. with his agency.

"(2) Promptly, correctly and in strict accordance with Company's instructions, account for all Company moneys, goods, products, equipment, etc., in his possion, or coming into his custody, and pay the Company for any shortages which may develop at any time.

"(3) Sell the products of the Company for cash, or on credit properly authorized, and not exchange or agree to exchange the Company's products for property or merchandise for private use or account; personally pay the Company on demand (a) the sum due on any account opened by him without authority, and (b) any portion of any credit account which has been sold in excess of the credit limit placed thereon by the Company. The Company shall not be under any obligation to make any attempt to collect such accounts nor to assign any part of such accounts to Agent until the Company shall have received full settlement thereof.

"(4) Neither (a) sell the Company's products, directly or indirectly, at less than Company's authorized prices, nor (b) enter into any secret agreements, contracts or understandings with any customer or competitor for the purpose of reducing the price of the product or controlling business.

"(5) Not use the Company's goods or funds in any way for private purposes and not cash out of the Companys funds personal checks for customers or other persons.

"(6) Not retain the amount of compensation due him from the Company from or as a charge against funds or any other property of the Company for which he is accountable.

"(7) Bear all expenses, except those mentioned in section '(3)' of clause 'Fourth' incident to the proper operation of the station covered by this agreement, including, without limiting the foregoing, (a) cost of painting, lettering and general maintenance of the bulk station facilities, service station facilities, trucks, miscellaneous equipment, when owned by the Agent; and (b) cost of handling and installing gasoline and lubricating oil pump and tank equipment, whether or not said equipment be owned by the Company, which installation and handling by the Agent, if the Company owns the equipment, shall in no manner affect the Company's title. Title to all facilities and material used in installing the Company's equipment shall pass

to the Company upon completion of installation, the Agent's compensation therefor being taken into account when establishing rates of commission hereunder.

"(8) At his expense, furnish trucks and other equipment, when not supplied by the Company, in strict accordance with the Company's standards for such equipment.

"(9) At his expense, furnish all assistants and employees he may require for the proper and diligent operation of said station, and assume full direction and control over and responsibility for all such assistants and employees, and indemnify and save the Company harmless from loss arising out of or by virtue of all damage to property and/or injury to persons (whether or not such injury result in death) occasioned by the acts of the Agent, his assistants and/or employees.

"(10) Strictly abide by the provisions of the Code of Fair Competition for the Petroleum Industry promulgated by the President of the United States pursuant to the provisions of the National Industrial Recovery Act.

"(11) Not permit any assistant or employee or other person who is not of mature age and judgment to fill, handle, ship or deliver any refined oil or gasoline at or from the Agent's plant, store rooms or vehicles.

"(12) Not assign this agreement without the prior written consent of the Company.

"(13) Pay any indebtedness accruing to the Company at Seattle, Washington.

"The Company shall:

"(1) Have the right at its option to withhold any commissions, moneys or anything of value in its possession belonging to or due Agent, for the purpose of reimbursing itself for any amounts due hereunder from Agent at any time.

"(2) In the event of the termination of this agreement, have the right, for a period of not to exceed three (3) months following the date of such termination, to

use, as it sees fit, all of agent's storage facilities for petroleum products located at agent's bulk plant premises at St. Helens, Oregon, and to replenish its stock of merchandise in such facilities, and sell and deliver its products from said premises, and remove all of its products and other properties therefrom during the said period, and shall pay a rental at the rate of $——— per month for the period of said facilities are so used.

"(3) Pay (a) freight on products shipped, (b) license fees assessed for operation of main station and (c) taxes on Company's merchandise, stock and equipment.

"(4) Pay the Agent the following commissions,

\* \* \*

"In event of termination of this agreement by either party, the Agent shall not engage directly or indirectly in the business of selling or distributing petroleum products within a radius of fifty miles from the city of St. Helens, Oregon, for a period of one year from the date of such termination.

"The right of either party to require strict performance by the other hereunder shall not be affected by any previous waiver, forbearance or course of dealing.

"(1) This agreement shall continue in full force and effect until terminated by either party. (2) Any and all agreements heretofore existing in reference to Agent's employment or compensation are hereby superseded and cancelled, and no modification of this agreement shall be binding unless signed by the parties hereto. \* \* \*"

The complaint alleges that on June 10, 1934, the three defendants in conducting their business "did have possession of, maintain and operate a certain International automobile truck, motor No. 3637, bearing license No. 56-003, issued by the State of Oregon for the year 1934, which said truck said defendants were on said date operating in a common and joint enter-

prise and were using and operating and engaged in transporting to the patrons and customers of said defendants certain oil drums of and belonging to the said business of said defendants; plaintiff further alleges that said oil drums and truck were then and there part of defendants equipment for the carrying on and maintaining their said business and said truck was painted with the signs, trade name and trademark of the said Texas Company''. It was on June 10, 1934, that the accident happened. It occurred on the Columbia River Highway near Delena. The complaint, in making the allegation just quoted, states that the truck was being operated on the Columbia River Highway near Delena. The answer, after denying all averments of the complaint ''save and except such allegations as may be specifically admitted in these defendants' further and separate answers'', avers that on the 22d day of November, 1933, the appellant and Steele executed the contract aforementioned, and then alleges: ''During all the times mentioned in the plaintiff's complaint and prior thereto the said E. T. Steele is and was an independent contractor. * * * Nor did they (the appellant) have any right to control the operation and movement of the truck, motor No. 3637, bearing license No. 56-003 * * * At all times herein mentioned in the plaintiff's complaint, namely, the 10th day of June, 1934, and that on the said 10th day of June, 1934, the said defendants E. T. Steele and Phil Bewley did take, drive and operate the said automobile truck over and along the Columbia River Highway on a fishing expedition of their own, without knowledge, authority or control of this defendant, and that during all times mentioned in the plaintiff's complaint when the said automobile truck was being operated over and along the highway in an

easterly direction the said truck was under the sole, exclusive control of the said defendant Phil Bewley who was at said time and place driving and operating the same; and that the said Phil Bewley was not at the time nor never has been an agent or employee of this said defendant, The Texas Company, nor was he at said time an agent or employee of the said E. T. Steele." The answer of the defendants Steele and Bewley, after denying all averments of the complaint, alleges: "Defendants admit that the defendant Steele, likewise, was engaged in the business of buying and selling automobile oils and gasoline and that in the conduct of his business used and maintained a delivery truck or trucks and certain storage facilities for the storage, transportation and delivery of gasoline, oils and like products; admit that on the 10th day of June, 1934, the defendant Steele had possession of, maintained and operated a certain International automobile truck, motor No. 3637, bearing license No. 56-003, issued by the State of Oregon for the year 1934; admit that said truck was part of the defendant Steele's equipment and that said truck was painted and among other things bore the name of The Texas Company; admit that on said 10th day of June, 1934, these answering defendants were traveling in said truck in an easterly direction along the Columbia River Highway near and easterly of the place called Delena."

Immediately prior to the collision and at the time of its occurrence Bewley and Steele were in the driver's seat of the truck, the former being seated behind the steering wheel. The certificate of title concerning this truck which was issued by the Secretary of State, pursuant to the provisions of §§ 55-201 to 55-214, Oregon Code 1930, indicates that in the period of May 13, 1933, to February 26, 1935, this truck was owned by the

International Harvester Company of America, and that on the day last mentioned title was transferred to Eva W. Steele. S. L. Winch, who was at the scene of the accident, testified: "The truck was painted red, it had a Texaco emblem on it." At this juncture appellant's counsel declared, "I object to that as a conclusion." The court then directed the witness to describe the truck. He replied, "It was painted red, it had a Texas Company emblem on it, and the name of Steele." He was then asked, "What did it say on it?" and replied, "It said 'Texaco'." A motion was then made that the statement of the witness wherein he declared that a Texas Company emblem was on the car be stricken, which was denied, but the witness was directed to described more fully the letter on the truck which he did by saying, "I stated 'Texaco' and 'E.' something 'Steele', I think it was 'Distributor, St. Helens'." He also testified that five or six barrels were upon the truck and that the hour was about 3:30 p. m. One George F. Mosteller, who operates a confectionary and filling station at Westport, testified that June 10, 1934, about noon, Steele called upon him, asking for the privilege of leaving some oil barrels on Mosteller's property. The privilege was granted, and then Steele, according to Mosteller, "went out and told the fellow that was driving the truck to unload them and he came in and set down and had a cup of coffee and a piece of pie while he was there, and when he started out, he was in a hurry and he says, 'Whenever you are ready for my product, we are ready to go'." Mosteller knew that Steele was engaged in the sale of the appellant's products. In response to a question whether Steele "was down there that day to service a boat", he replied, "Yes." Delena is fifteen or sixteen miles from Westport and the latter place is 48 miles from St. Helens.

The above is a statement of all of the facts disclosed by the record concerning the relations, if any, between the three defendants, and the errand upon which Steele and Bewley were engaged at the time of the accident. The defendants presented only medical testimony.

■ The appellant contends that the circuit court committed reversible error when it denied appellant's motion to strike Winch's statement, "It had a Texaco emblem on it". It will be recalled that the appellant's objection to the testimony was, "I object to that as a conclusion". The witness should have been required to describe the emblem, but this omission we do not deem reversible error. As will be seen from the admissions of the appellant's answer, it admits that at the time of the accident the truck "referred to in the plaintiff's complaint as an International automobile truck, motor No. 3637, bearing license No. 56-003" was being operated upon the Columbia River Highway by Steele and Bewley. The complaint describes the truck as an "International automobile truck, motor No. 3637, bearing license No. 56-003" and "painted with the signs, trade name and trade-mark of the said Texas Company". Thus, it is seen the appellant admitted that the truck which was involved in this accident bore its emblem. The failure of the witness to describe the emblem does not constitute reversible error.

Summarizing, the facts may be stated thus: November 22, 1933, the appellant and Steele signed the foregoing agreement which appointed Steele the appellant's agent. Since the appellant's answer, in referring to the relationship arising out of the agreement just mentioned, states, "That during all the times mentioned in the plaintiff's complaint and prior

thereto, the said E. T. Steele is and was an independent contractor'', we believe that it is permissible to infer that Steele entered upon the performance of the duties created by the contract, and that he was still so engaged June 10, 1934. On that day a truck operated by Steele went to Westport to service a boat. Here Steele obtained from one Mosteller, the operator of a filling station, the privilege of unloading on Mosteller's property some oil barrels. The barrels were then unloaded, and as Steele was leaving he assured Mosteller, ''Whenever you are ready for my product, we are ready to go''. This seems to warrant an inference that Steele was endeavoring to induce Mosteller to purchase the appellant's products. Next, we find the truck with Steele and Bewley in the driver's seat, colliding with the car in which the plaintiff was riding. It will be observed that we know virtually nothing about Bewley. If he was the individual to whom Mosteller referred as ''the fellow that was driving the truck'' and who unloaded the barrels at Steele's direction, an inference might be warranted that Bewley was Steele's assistant; but the record contains no such evidence. However, as has already been observed, the answer avers that upon the occasion mentioned in the complaint ''the said defendants E. T. Steele and Phil Bewley did take, ride and operate the said automobile truck over and along the Columbia River Highway''. It is true that the sentence continues that they were ''bent on a fishing expedition of their own''. Appellant seems to believe that the averment just mentioned—although improved —destroys the effect of the admission. But the admission that the two men were operating the truck is unconditional; that is, the admission is made without reference to whether the men were ''bent on a fishing expedition of their own''. The scene of the accident

was between Westport, where Steele had performed the above acts, and St. Helens, the point mentioned in the above contract. Thus, it is permissible to infer that after Steele had serviced the boat at Westport, had unloaded the oil barrels and had eaten his lunch, he undertook the return trip to St. Helens and while so bound the collision occurred.

■ We shall now undertake to determine whether the relationship between the appellant and Steele was that of principal and agent, as the plaintiff contends, or whether Steele was, as the appellant contends, an independent contractor for whose tort the appellant was not liable. Both parties have argued the issue extensively, and have cited many authorities. All of this has received careful consideration from us, but we find no occasion for setting forth in our decision an extensive analysis of the contract nor a review of the authorities. Contracts substantially similar to this one have been before appellate courts many times, and in the decisions an analysis of the contract and the authorities applicable to a determination of the relationship it creates are set forth. All courts, with the possible exception of two, agree that the relationship which is created is that of principal and agent. Our consideration of the issue brings us to a like result. Because analyses of the contracts and the authorities are set forth in the decisions which we shall now cite, we shall not lengthen this decision by our analysis of the contract and a review of the authorities.

The most recent decision which has come to our attention is *Texas Company v. Jackson* 174 Miss. 737 (165 So. 546). There a contract very similar to the one before us appointed one R. L. Gober "agent for the Company at Tupelo, Miss.". Gober owned the premises upon which he conducted the sales of the Texas

Company's products. He owned a truck used in the business and employed one A. H. Jackson to drive it. Due to a defect in its steering wheel, the truck ran into a ditch and Jackson was injured. He then brought the action under review in which he made the Texas Company a defendant. The decision, after quoting virtually the entire contract between the Texas Company and Gober, held that it created the latter the oil company's agent. It also held that Jackson was the company's sub-agent. The judgment in Jackson's favor was affirmed.

In *The Texas Company v. Mills*, 171 Miss. 231 (156 So. 866), a contract similar to the one in *Texas Company v. Jackson*, supra, and similar to the one before us, was construed. In that case the premises upon which the bulk sales business was conducted was owned by the Texas Company. While an assistant of the alleged agent was returning to the sales depot the truck which he was operating skidded, overturned and injured him. A judgment against the Texas Company was sustained, the court holding that the contract created an agency and that the injured assistant was a sub-agent of the oil company.

In *Texas Company v. Ingram*, 16 Tenn. App. 267 (64 S. W. (2d) 208), the facts were that the Texas Company and one J. L. Roberts signed a contract very similar to the one before us. Roberts employed one W. L. Foutch to operate a truck owned by Roberts, which was used in the sale and delivery of products of the oil company. Foutch negligently drove the truck into collision with the plaintiff's automobile. A large quantity of evidence in addition to the contract was received for the purpose of indicating the relationship between the oil company, Roberts and Foutch. The trial judge submitted to the jury a determination of

the relationship. It evidently found that Roberts was the agent, and that Foutch was the sub-agent of the oil company. The resulting judgment was affirmed in the decision under review.

In the following decisions the courts held that contracts substantially similar to the one before us made the distributor the agent of the oil company: *Standard Oil Company v. Parkinson,* 152 Fed. 681 (82 C. C. A. 29); *Gulf Refining Co. v. Nations,* 167 Miss. 315 (145 So. 327); *Angell v. White Eagle Oil & Refining Co.,* 169 Minn. 183 (210 N. W. 1004); *Magnolia Petroleum Co. v. Johnson,* 149 Ark. 553 (233 S. W. 680); *Magnolia Petroleum Co. v. Pierce,* 132 Okla. 167 (269 P. 1076, 61 A. L. R. 218); *Fischer v. Havelock,* 134 Cal. App. 584 (25 P. (2d) 864); and *Buchholz v. Standard Oil Co.,* 211 Mo. App. 397 (244 S. W. 973). In *Gulf Refining Co. v. Nations,* supra, the above indicated result was reached, notwithstanding the fact that one provision of the contract was: "It is expressly agreed and stipulated that neither the consignee nor the employees of the consignee shall be deemed or construed to be employees of the consignor." In *Gulf Refining Co. v. Huffman & Weakley,* 155 Tenn. 580 (297 S. W. 199), the contract was similar to the one before us, but the parties presented much additional evidence concerning the relationship between the oil company and its alleged agent. The issue was submitted to the jury which evidently found that the one was principal and the other was agent. The resulting judgment was affirmed on appeal. In *Texas Company v. Brice,* 26 Fed. (2d) 164, upon which the appellant relies in part to sustain its contention that Steele was an independent contractor, the contract between the Texas Company and its alleged agent (Hutton) is not quoted in the decision. The issue was whether an assistant of Hutton was a sub-agent of the

Texas Company. The court held that he was not. In so holding, the court did not decide whether the relationship between the oil company and Hutton was that of principal and agent, but assumed that it was. In *Rogers v. Lewis* (Miss.), 144 So. 373, the memorandum decision does not quote the contract which the Texas Company had effected with an alleged agent. However, the decision held that the assistant of the alleged agent was not a sub-agent of the oil company. The decision was overruled in *Texas Company v. Jackson,* supra. In the much-cited decision entitled *Singer Mfg. Co. v. Rahn,* 132 U. S. 518 (10 S. Ct. 175, 33 L. Ed. 440), Mr. Justice Gray held that a sewing machine canvasser who operated on a commission basis, who was required to devote all of his time to the business, who agreed to conform to the rules of the company, and who was furnished with a wagon by the sewing machine company, although he himself provided the horse and harness, was an agent, and not an independent contractor. The decision declared:

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done as well as the results to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done'."

It is altogether possible that we may have overlooked some of the authorities construing contracts similar to the one before us. If we have not, then the authorities are unanimous that contracts similar to the one before us create the relationship of principal and agent between the oil refiner and its bulk distributor. In all of these decisions the courts pointed out that the distributor was subject to the principal's will, and was bound to follow its rules, practices and instructions. They hold that the contract required the

alleged agent to render service as distinguished from one that requires him merely to effect a result. In some the courts mention the fact that the distributor was expected to effect contractual relationship between the principal and third parties. In virtually all of the decisions the fact that the agreement could be terminated at any time was deemed a strong indication that the distributor was an agent, and not an independent contractor. In many of the decisions the courts expressed a belief that the business in which the distributor became engaged was really the business of the principal. The decisions took note of the above and many of the other distinctions between an agent and an independent contractor which are enumerated in § 220 Agency, Restatement of the Law.

The circumstances that persuaded the other courts are present in the instant case. It is our belief that Steele was the appellant's agent.

▇▇▇ The appellant stresses the fact that Bewley, and not Steele, was behind the steering wheel at the time the collision occurred. But Steele, the appellant's alter ego, was seated beside Bewley. It will be recalled that the answer admits ''at all times herein mentioned and mentioned in the plaintiff's complaint * * * E. T. Steele and Phil Bewley did take, drive and operate the said automobile truck over and along the Columbia River Highway''. It is true that a subsequent part of the sentence states that ''the said truck was under the sole, exclusive control of the said defendant Phil Bewley, who was at said time and place driving and operating the same''. To the extent that the averment just mentioned conflicts with the admission that the appellant's agent jointly shared in the operation of the truck, the averment is subordinated to the admission under the rule that, where statements in a

pleading are contradictory, the pleader is bound by the one most favorable to his adversary: *Peters v. Queen City Ins. Co.,* 63 Or. 382 (126 P. 1005), and 49 C. J., Pleading, p. 119, § 112. But, be this as it may, the appellant's alter ego was in the seat at the time of the collision. Under these circumstances, we believe that the following observations of the Pennsylvania court in *Bell v. Jacobs,* 261 Pa. 204 (104 Atl. 587) are applicable:

"Defendant had secured Mr. Fink, an expert workman, to make some repairs to the automobile, and, before leaving it at the repair shop, they were taking it for a drive to see what was needed. Fink was acting as chauffeur, and defendant sat beside him, but made no request or suggestion as to the driving of the car. It was defendant's car, and he acquiesced in what Fink, who was acting for him, did, and can not be excused because he was not personally at the wheel. A man out riding in his car is not relieved from responsibility for its management because, with his permission, another is acting as driver; and this is especially so where the owner tacitly assents to the manner in which the car is driven. There is a presumption, not here rebutted, that an owner present in his car has power to control it."

See also *Thompson v. Malone & Hyde,* 16 Tenn. App. 152 (65 S. W. (2d) 1079); 2 Am. Jur., Agency, p. 14, § 3; 4 Blashfield, Cyclopedia Automobile Law (permanent edition), p. 303, § 2493; and *Zeeb v. Bahnmaier,* 103 Kan. 599 (176 P. 326, 2 A. L. R. 883) (annotated). We believe that, in view of the foregoing facts, the hand of Bewley as he drove the truck should be deemed the hand of Steele, and, therefore, of the appellant. It is, therefore, unnecessary to determine whether Bewley was or was not the appellant's sub-agent.

■ The appellant argues that the evidence fails to prove that Steele was acting in furtherance of appel-

lant's business and within the scope of his authority at the time the collision occurred. We have reviewed the evidence in a preceding paragraph. The trial judge instructed the jury:

"The plaintiff in this case has the burden of proving, as I shall presently call more particularly to your attention, that the defendant Steele at the time of this accident was not only the agent of the defendant Texas Company, but that he was acting for the defendant Texas Company at the time of the accident in the operation of the automobile truck in question. * * * If you find from a preponderance of the evidence that Steele was in control of the truck, and that it was being operated at that time on the business of the Texas Company, and in the line of Steele's duty as agent of the Texas Company, and within the scope of his agency, then if you find Steele liable in this case you must also find the company liable. On this question, as I have said, the plaintiff has the burden of proof, and if you are not convinced by * * *."

We believe the jury could very reasonably have inferred from the evidence that Steele was engaged upon the business of the appellant and was acting within the scope of his authority when he went to Westport, and that he was returning to the St. Helens distributing plant at the time the collision occurred. Since the verdict was favorable to the plaintiff and adverse to the defendants, the jury evidently resolved these issues in favor of the plaintiff. We find no merit in this contention.

The ownership of the truck, which is argued extensively in the briefs, we deem immaterial because we are drawing no presumption of agency from that fact. The agency of Steele is settled by the contract aforementioned.

■ We have not overlooked the fact that the complaint alleges that the three defendants were joint venturers. They were not. This mistake of the plaintiff, however, did not mislead the appellant, and it knew best of all the real relationship between itself and Steele. Section 1-911, Oregon Code 1930, provides that this court must disregard errors ''in the pleadings or proceedings which shall not affect the substantial rights of the adverse party''. A variance between the pleadings and the proof is not material unless it amounts to a failure of proof. Sections 1-901 to 1-903, Oregon Code 1930.

The above conclusions, we believe, dispose of all the issues presented by the appellant.

The judgment of the circuit court is affirmed.

CAMPBELL, C. J., and KELLY and BELT, JJ., concur.